**Bennie F. CALHOUN, Plaintiff–Appellant,**

v.

**NEW YORK STATE DIVISION OF PAROLE OFFICERS: J. McQuire; Ted Clark; R. White and G. Stern, Defendants–Appellees.**

No. 997, Docket 92–2652.

United States Court of Appeals, Second Circuit.

Submitted March 9, 1993.

Decided July 23, 1993.

Bennie F. Calhoun, pro se.

Robert Abrams, Atty. Gen. of the State of N.Y. (Peter Schiff, Peter G. Crary & Denise A. Hartman, Asst. Attys. Gen.), for defendants-appellees.

Before TIMBERS, KEARSE, and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Plaintiff-appellant Bennie F. Calhoun, *pro se*, appeals from a summary judgment of the United States District Court for the Western District of New York, Kenneth R. Fisher, magistrate judge, that dismissed his complaint filed under 42 U.S.C. § 1983. The magistrate judge held (1) that when defendants extended his maximum expiration date (the latest date by which a defendant must be released from prison) by five days based upon a "declaration of delinquency", without affording Calhoun the final parole-revocation hearing required by *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), they violated his due process rights; but (2) that defendants' conduct did not constitute cruel and unusual punishment under the eighth amendment; (3) that defendants James McGuire and Ted R. Clark were not

personally involved in the due process violation; and (4) that defendants Ronald P. White and Gary Stern, who *were* personally involved, were nevertheless entitled to qualified immunity.

On appeal, Calhoun advances two arguments: that the magistrate judge erred in finding no eighth-amendment violation, and in granting qualified immunity to defendants White and Stern. For the reasons set forth below, we affirm.

## BACKGROUND

Calhoun's appeal focuses on the events that occurred after he was arrested on April 17, 1985, by New York State parole officials, based on a warrant charging him with violating his parole from a state-court sentence that was to expire two months later, on June 9, 1985. The facts are undisputed.

On September 5, 1979, Calhoun was convicted in New York State of forgery in the second degree and sentenced to an indeterminate term of imprisonment of 0–6 years, with an original maximum expiration date of June 9, 1985. On July 24, 1984, he was released to parole supervision, subject to the usual conditions of release. Calhoun's supervision was assigned in the Rochester area office to parole officer Stern, who was directly supervised by senior parole officer White, both of whom are defendants in this case. On April 11, 1985, approximately two months before expiration of his parole term, Calhoun was arrested in Bath, Steuben County, New York, on charges of disorderly conduct and assault. He was released on bail the same day. Upon being notified of the arrest, defendant White authorized the issuance of a parole warrant, which is an administrative warrant used in retaking and detaining a parolee or conditionally released prisoner. On White's instructions, defendants McGuire and Clark, from the Elmira regional office, served the warrant on Calhoun on April 17, 1985, and he was immediately confined in the Steuben County jail. The next day, defendant Clark served on plaintiff a notice of violation and violation of release report.

At this point, under clearly established law, Calhoun became entitled to two hearings: (1) a preliminary hearing on whether there was probable cause for the violation-of-parole charge, and (2) a final hearing on whether he was actually guilty of violating his parole. *See Morrissey v. Brewer*, 408 U.S. at 485–88, 92 S.Ct. at 2602–04. If guilty, he could be held in confinement until the maximum expiration date of his original sentence. Calhoun waived his right to the preliminary hearing, a waiver that is the equivalent under New York Executive Law § 259–i to a finding of probable cause that the violation had occurred. He did not, however, waive his right to the final hearing.

On May 8, 1985, Stern and White prepared a case summary report, recommending (1) that Calhoun be "declared a delinquent" as of April 11, 1985, the date of his arrest, (2) that a final revocation hearing be held, and (3) that Calhoun be confined until his maximum expiration date, June 9, 1985. This report was forwarded to the Division of Parole in Albany.

The decision as to whether a declaration of delinquency shall issue lies with a member of the parole board. New York Executive Law § 259–i(3)(d); 9 NYCRR § 8004.3. On May 14, 1985, Commissioner of Parole Gerald Burke issued a "Decision Notice" declaring Calhoun delinquent as of April 11, 1985, and directing the local parole office to arrange a final violation hearing and to return Calhoun to a correctional facility unless the charged violation was dismissed as a result of the hearing.

By operation of New York's Penal Law § 70.40(3)(a), the declaration of delinquency interrupted Calhoun's sentence beginning with April 11, the date he was alleged to have committed his new crime, and the "interruption" continued until he was returned to an institution under the jurisdiction of the New York State Department of Correctional Services—here until April 17, when he was served with the parole violation warrant and confined in the Steuben County jail. Where a sentence has been interrupted by a declaration of delinquency, the term of defendant's sentence is "adjusted", i.e. extended, beyond the original maximum expiration date for a period of time equal to the interruption period, less one day. White, in his affidavit

of February 19, 1991, explained how he calculated Calhoun's adjusted maximum expiration date;

The date of the delinquency was established as April 11, 1985, the date the plaintiff was arrested in Bath, New York. Taking this into consideration, along with the date the warrant was executed (April 17, 1985) and the original maximum expiration date (June 9, 1985), plaintiff's adjusted maximum expiration date was June 14, 1985. The calculation is reflected below:

```
   85-4-17   Date Warrant enforced
–  85-4-11   Delinquency date
   ─────────
        6    Delinquent time

   85-6-09   Original maximum expiration date
+       6    Delinquent time
   ─────────
   85-6-15
–       1    Day (Dept. policy)
   ─────────
   85-6-14   Adjusted maximum expiration date
```

White affidavit of February 19, 1991, at ¶ 17.

As a result, then, of the declaration of delinquency, Calhoun's sentence was extended by five days. The extension, however, was subject to cancellation if, on the final hearing, Calhoun's charged parole violation should be dismissed.

The problem for this case arises because Calhoun never received his final hearing. On May 28, 1985, White and supervising parole officer Warren L. Enders submitted a supplementary violation of parole report recommending in accordance with the Division of Parole's Policy and Procedure Manual, Item 9212.00, that Calhoun be "administratively" discharged because he would reach his adjusted maximum expiration date before the end of the 90 days then allowed for holding a final parole-violation hearing. Ronald Hotaling, Director of Parole Board Operations explained the parole board's policy:

In order to preclude the incarceration of an alleged violator for a substantial period of time beyond a maximum expiration date as extended by the delinquent time owed, the Board developed a policy whereby, in a case where the adjusted maximum expiration date was scheduled to occur while the charges of violation and parallel criminal charges were still pending, parole staff would submit a supplementary report requesting that the case be closed for administrative reasons as of the date that the delinquent time owed had been satisfied. Hotaling Affidavit of February 15, 1991, at ¶ 9.

Adopting the recommendations for closing the case, the Director of Field Operations, on June 11, 1985, issued a decision notice stating that commissioners Burke, Salo, and Rodriquez had reviewed the supplementary violation of parole report and directed the Rochester office to "cancel delinquency and close by ME (6/14/85) [the adjusted maximum expiration date]." The Rochester office received this notice on June 12, 1985, and White accordingly instructed the Elmira office to lift the parole warrant on June 14, 1985. Calhoun was released on that date.

Thus, without providing him with any hearing on the merits of the charged parole violation, the state extended Calhoun's sentence by five days, simply because he had been *charged* with a violation of parole. Calhoun contends that this denied him due process. He claims that the defendants were required either to cancel the five days' delinquency time or to hold a final revocation hearing to determine whether the conditions of his parole had been violated.

His complaint under 42 U.S.C. § 1983 named as defendants four parole officers: James McQuire, Gary Stern, Ted Clark, and Ronald P. White. He sought from them damages in the amount of $1,500 for each

day of his illegal detention. After the parties consented to proceed before United States Magistrate Judge Kenneth R. Fisher, *see* 28 U.S.C. § 636(c), both sides moved for summary judgment.

In a lengthy decision and order dated October 1, 1992, the magistrate judge granted defendants' motion for summary judgment, denied Calhoun's cross motion for summary judgment, and denied his motion to amend the complaint. The magistrate judge held that Calhoun had a protectable liberty interest in being released on his maximum expiration date and that the practice of declaring a delinquency upon arrest and thereby extending the maximum expiration date required more process than was given Calhoun. The court rejected Calhoun's claim that the extended detention violated his eighth amendment rights. The court also held that defendants Stern and White, who made recommendations regarding Calhoun's delinquency date and his adjusted maximum expiration date, and who transmitted the parole board's notices regarding such dates and his release, were protected by qualified immunity.

With regard to defendants McQuire and Clark, who had merely executed the parole-violation warrant, the court held that they were not "personally responsible for the acts of which plaintiff truly complains." Finally, the court held that the three-year statute of limitations barred Calhoun from amending the complaint to add the commissioners of parole who ultimately made the decisions regarding plaintiff's delinquency date, adjusted maximum expiration date, and date of release. The court reasoned that although plaintiff had knowledge well within the three-year period of limitations that it was the commissioners of parole who were ultimately responsible for the decisions about which plaintiff complains, nevertheless, during that entire period plaintiff had specifically targeted his action only at the named defendants.

Judgment dismissing the complaint was entered accordingly and Calhoun timely appealed.

## DISCUSSION

Calhoun challenges on this appeal only the rulings (1) that defendants Stern and White were entitled to qualified immunity, and (2) that his eighth amendment protection against cruel and unusual punishment was not violated. We review the district court's grant of summary judgment *de novo;* all evidence and all inferences to be drawn from that evidence must be viewed in the light most favorable to Calhoun. *Prunier v. City of Watertown,* 936 F.2d 677, 679 (2d Cir.1991).

Since a determination of a constitutional violation is necessary before examining whether defendants are entitled to qualified immunity, *see Siegert v. Gilley,* — U.S. ——, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991) (the merits of a constitutional claim are a preliminary inquiry required before passing on an issue of qualified immunity), we will first discuss whether Calhoun's constitutional rights were violated; then we will take up the immunity issue. ·

### A. *Due Process*

■ Where a state provides a system of parole, it may not revoke a person's parole without providing minimum due process protections. The state must provide a preliminary probable cause hearing (which Calhoun waived in this case), as well as a final revocation hearing, at which a parolee may present evidence and confront witnesses. *Morrissey v. Brewer,* 408 U.S. at 487–89, 92 S.Ct. at 2603–04.

■ New York provides procedures for parole revocation that generally satisfy due process. *See, e.g.,* N.Y.Exec.Law § 259-i(3)(f). We have also approved the practice of declaring a delinquency date and readjusting a defendant's maximum expiration date when the alleged parole violation is sustained at a final revocation hearing. *See Graves v. Olgiati,* 550 F.2d 1327, 1329 (2d Cir.1977). Under the New York scheme, however, if the parole violation is not sustained at the final hearing, the delinquency is cancelled, N.Y.Penal Law § 70.40(3)(a), and the "interruption" of the sentence occasioned by a delinquency "shall not apply". N.Y.Exec. Law § 259-i(3)(h).

Our problem in this case is what happens when due to insufficient time remaining be-

fore expiration of a defendant's sentence it is impossible or inconvenient to hold a final revocation hearing before expiration of a defendant's sentence. Our answer is that without providing a final revocation hearing, the state may not constitutionally hold a defendant beyond his original, unadjusted, maximum expiration date unless a final hearing would have been impracticable.

■ Under both the due-process clause and state law, an inmate has a liberty interest in being released upon the expiration of his maximum term of imprisonment. Since an inmate parole grantee has a liberty interest in being released from prison as soon as possible, *Green v. McCall,* 822 F.2d 284, 287–90 (2d Cir.1987), it surely follows that he also has a liberty interest in being set free at the end of his term. *Id.* at 289 ("[s]ince * *. * inmates for whom no parole date had been set could have some protectable interest, we are hard pressed to believe that th[e] Court would not also find that a protectable interest is possessed by an inmate whose release date has already been set and is less than six months away"). Calhoun, therefore, had a liberty interest in his release from confinement on June 9, 1985, the deprivation of which should not have occurred without due process.

■ Due process requires, as a general matter, an "opportunity to be heard 'at a meaningful time and in a meaningful manner'" *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965)). In the ordinary parole-revocation case, New York does provide an adequate opportunity to be heard. First, providing the preliminary hearing assures that a declaration of delinquency, and thus an interruption of sentence, will not occur without at least a finding of probable cause. Second, providing the final revocation hearing within 90 days, with all of its procedural prerequisites under state law, *see* N.Y. Executive Law § 259–i(3)(f), guarantees that the original declaration of delinquency made by the board is reliable, or if not, will be promptly corrected. Third, erroneous determinations may be reviewed promptly in a proceeding

under NYCPLR Article 78, if brought in advance of the adjusted maximum expiration date, or in a state habeas corpus proceeding. *People ex rel. Brown v. New York State Division of Parole,* 70 N.Y.2d 391, 398, 521 N.Y.S.2d 657, 516 N.E.2d 194 (1987). Therefore, New York's procedures relating to the adjustment of an inmate's maximum expiration date, in most circumstances, would provide the due-process protection required by *Mathews.*

■ Calhoun, however, was accorded only the first of these procedures, when he was offered a preliminary hearing (which he waived). He was never found guilty of the charged parole violation, and the charge, itself, was summarily dismissed without a hearing for reasons of administrative convenience. Moreover, the state did not even alert Calhoun to the fact that his sentence expiration would be finally adjusted until after the delinquency adjustment had been largely, if not fully, served. The state may not extend a prisoner's sentence based on a claimed parole violation, without providing him the final due process hearing required by *Morrissey* when such hearing is practicable. Having failed to grant Calhoun a final hearing, and having failed to offer any evidence that it would have been impracticable to hold a final hearing between Calhoun's detention on April 17 and his original maximum expiration date of June 9, defendants had no constitutional authority to hold him in prison for the five extra days beyond his original maximum expiration date. We therefore agree with the magistrate judge's ruling that the defendants' conduct violated Calhoun's constitutional right to due process.

We recognize that considerations of timing and practicality become significant when a parole violation comes to light near the end of a parole period. A delinquency can be declared only after a determination that there is probable cause for the parole violation or that the defendant has absconded from parole. When declared, the delinquency interrupts the sentence by a period that begins with the commission of the charged parole violation and runs until the defendant is reincarcerated.

■ In this case the interruption, the period between Calhoun's arrest for the new crime and his reincarceration in the Steuben County jail, was short, only five days. Moreover, only two months remained until the maximum expiration date of his original sentence. If defendants wished to extend that date by the five-day delinquency period, they were constitutionally obliged to hold the final revocation hearing before the original maximum expiration date, or demonstrate that it would have been impracticable to do so. The state's failure to provide a final parole revocation hearing when time constraints make it impracticable to do so is not a constitutional violation.

### B. Eighth Amendment

■ Calhoun also claims that the extra five days of imprisonment violated his eighth-amendment protection against cruel and unusual punishment. In our view, the five-day extension of Calhoun's release date did not inflict "a harm of a magnitude" that violates a person's eighth amendment rights. *Cf. Sample v. Diecks*, 885 F.2d 1099, 1109 (3rd Cir.1989) (eighth amendment violation *did* result from nine-month detention beyond the expiration date). Moreover, even if we were to assume that the unauthorized addition of five days to a six-year sentence did constitute cruel and unusual punishment, Calhoun has failed to demonstrate that defendants were deliberately indifferent to his problem. *Sample*, 885 F.2d at 1110 (to establish § 1983 liability for violation of eighth amendment, plaintiff must show that defendant had knowledge of prisoner's problem and was deliberately indifferent to prisoner's plight). In short, Calhoun's claim under the eighth amendment fails.

### C. Qualified Immunity

■ The doctrine of qualified immunity shields state officials from liability for damages if their actions did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known", *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), or in circumstances where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights, *see Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The official does not have immunity, however, where the "contours of the right" were sufficiently clear for a reasonable official to understand that what he is doing violates that right. *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039; *Vasbinder v. Ambach*, 926 F.2d 1333, 1341 (2d Cir.1991).

■ To determine whether a particular right was clearly established at the time defendants acted, a court should consider:

(1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992).

■ Under these principles, the magistrate judge correctly found that parole officers White and Stern were entitled to qualified immunity. In 1972, the Supreme Court held in *Morrissey* that parole could not be revoked without due process, and that the due process afforded must include a hearing and a right to confront witnesses. Thus, these general rights have long been clearly established. Few courts, however, have addressed the particular issue here: whether due process is violated by imposing delinquency time based on a finding of probable cause for a parole violation, and thereby extending a sentence without first providing a revocation hearing. One appellate court that has addressed a similar issue found that the readjustment of a maximum expiration date based upon the setting of a delinquency date must be based upon the violation being sustained at a final due process hearing. *See Sample v. Diecks*, 885 F.2d at 1107 n. 4 (noting in *dicta* that "backtime cannot be imposed without a formal revocation of parole by the parole board" and that the constitution requires a "hearing and formal ruling

before parole can be revoked and back time thereby imposed."). While we generally agree with this view of the third circuit, that opinion was not written until significantly after the events involved in this appeal.

Therefore, while it was clearly established that parole could not be revoked without due process, it was not clearly established in May and June of 1985 that imposing a short period of "delinquency time" without providing a final parole-revocation hearing would violate due process. Defendants were holding Calhoun based upon probable cause to believe that he had violated his parole. Due to the short time remaining on his sentence, his final hearing was cancelled for administrative convenience, and the violation was dismissed, all in accordance with the parole board's regulations and policy. No court that we are aware of had at that time ruled that the *Morrissey* due-process requirements extended to the relatively small group of cases where a parole violation is charged in the last few months of a parolee's sentence and where insufficient time remains to hold a final violation hearing before expiration of a defendant's sentence.

Since in these circumstances the constitutional right now claimed by Calhoun was not clearly established in the spring of 1985, defendants White and Stern were entitled to qualified immunity. We note that after this opinion is filed, the law will now be clearly established, at least in this circuit, that a defendant's prison sentence may not be extended as the result of a charged parole violation, unless the defendant is accorded a final due process hearing on that violation when practicable.

## CONCLUSION

The judgment of the district court dismissing the complaint is affirmed.