James F. SCHULTZ, Jr.,
Plaintiff–Appellant,

v.

Elaine EGAN, Deputy Sheriff; Roy Shipman, Corrections Counselor, Defendants–Appellees.

Docket No. 03–0119.

United States Court of Appeals, Second Circuit.

July 6, 2004.

James F. Schultz, Jr., Attica, NY, for Plaintiff–Appellant, pro se.

Carol L. Rhinehart, Onondaga County Law Department (Anthony P. Rivizzigno, County Attorney, on the brief), Syracuse, NY, for Defendants–Appellees.

PRESENT: STRAUB, POOLER and B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

Plaintiff–Appellant James F. Schultz, Jr., *pro se*, appeals from the March 10, 2003 judgment of the United States District Court for the Northern District of New York (Lawrence E. Kahn, *Judge*) granting Defendants–Appellees Elaine Egan's and Roy Shipman's motion to dismiss Schultz's complaint for failure to state a claim. Familiarity is assumed as to the facts of this case and its procedural context.

On February 4, 2002, Schultz brought suit under 42 U.S.C. § 1983 against Elaine Egan, a deputy sheriff and records officer at the Onondaga County Justice Center, and Roy Shipman, a corrections counselor at the Onondaga County Correctional Facility ("defendants"), alleging that he was incarcerated beyond his lawful release date in violation of the Eighth and Fourteenth Amendments.

It appears that Schultz was indeed incarcerated past his lawful release date. Schultz attaches to his complaint a March 17, 1999 decision and order from the New York Supreme Court, Onondaga County, which concluded that the release date that had been calculated for Schultz failed to properly credit time he spent in pretrial detention. The court converted the petition filed by Schultz under Article 78 of New York Civil Practice Law and Rules ("CPLR") to a habeas corpus petition and ordered Schultz's immediate release from custody, as his lawful release date had already passed.

Schultz alleges in his complaint that "[d]ue to the actions of the defendants plaintiff was detained in the Onondaga County Correctional Facility longer than his lawful sentence required, violating plaintiff's Eighth Amendment right to be free of cruel and unusual punishment." In addition, Schultz alleges in his complaint that his "Fourteenth Amendment guaran-tee of Due Process of Law was violated by defendants' determination to hold plaintiff beyond his lawful sentence without Due Process of Law." Schultz requested $50,000 in damages.

Schultz's complaint states that he brought the error in the calculation of his release date to the attention of Shipman, but Shipman "refused to adjust plaintiff's official time computation without a certified jail time certificate from Onondaga County Sheriff's department records officer, Deputy Elaine Egan." According to the complaint, Shipman contacted Egan "who took the position that pursuant to New York State, Penal Law § 70.30(3)(b) plaintiff had received pretrial detention credit toward the consecutive sentences. Therefore plaintiff would not be credited with pretrial detention credit toward the concurrent sentences."

In April 2002, defendants moved to dismiss Schultz's complaint, arguing that he had failed to state a cognizable constitutional claim and that they were protected by qualified immunity. The District Court referred the matter to Magistrate Judge David R. Homer, who issued a Report and Recommendation ("Report") on January 29, 2003 which recommended dismissal of Schultz's complaint. The Report noted that incarceration beyond one's release date could constitute cruel and unusual punishment if it is the result of deliberate indifference to the prisoner's liberty interest. However, the Report concluded that Schultz had failed to allege that Shipman or Egan were deliberately indifferent to his complaint that his sentence was miscalculated. Regarding Schultz's procedural due process claim, the Report said that Schultz had an opportunity to adjudicate his claim regarding his release date through either a petition under Article 78 of the CPLR or a state habeas corpus proceeding. The Report stated: "Schultz

brought an Article 78 petition and the county court granted his petition and ordered Schultz's immediate release from prison. This suffices to satisfy the due process clause." Finally, the Report concluded that defendants were in any event entitled to qualified immunity because their actions did not violate a clearly established right. The District Court adopted the Report in its entirety.

We review the dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) *de novo. Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). A plaintiff's claims can be dismissed for failure to state a claim only if we find that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Because Schultz's "complaint alleges civil rights violations and he proceeded *pro se* in the district court, we must construe his complaint with particular generosity." *Davis v. Goord,* 320 F.3d 346, 350 (2d Cir.2003) (internal quotation marks omitted).

We affirm the dismissal of Schultz's Eighth Amendment claim for substantially the reasons stated in the Report. However, we conclude that Schultz's procedural due process claim should not have been dismissed.

Schultz argues that defendants held him beyond his lawful release date without affording him due process. Specifically, Schultz argues that the due process clause required prison officials to conduct a hearing before rejecting his claim that his sentence was miscalculated.

"To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a court must find that, as the result of conduct performed under col-or of state law, the plaintiff was deprived of life, liberty, or property without due process of law." *Bedoya v. Coughlin,* 91 F.3d 349, 351 (2d Cir.1996). As the Report acknowledged, Schultz had a liberty interest in being released at the end of his term of imprisonment. *Calhoun v. N.Y. State Div. of Parole Officers,* 999 F.2d 647, 653 (2d Cir.1993) ("Under both the due-process clause and state law, an inmate has a liberty interest in being released upon the expiration of his maximum term of imprisonment.").

■ Defendants, citing *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), argue that "before finding that a deprivation of liberty violates due process of law in a Section 1983 action that challenges mistakes made by prison officials, the court must consider the adequacy and availability of remedies under state law." According to defendants, Article 78 and habeas proceedings are adequate and available state law remedies and thus due process was satisfied.

"When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of N.Y.,* 101 F.3d 877, 880 (2d Cir.1996) (citing *Hudson v. Palmer,* 468 U.S. 517, 532, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt,* 451 U.S. at 541). "Under the latter scenario, a deprivation effectuated through the random and unauthorized acts of government officials does not violate procedural due process so long as the government provides a meaningful remedy subsequent to the deprivation." *Locurto v. Safir,* 264

F.3d 154, 172 (2d Cir.2001). "The rationale for this principle is plain: because the challenged misconduct is random and unauthorized, it is impossible for the government to anticipate and prevent the wrongful loss of liberty or property in advance, and it has no realistic alternative other than to adopt remedies capable of righting the wrong after the deprivation." *Id.; see also DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir.2003) ("Where a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding."). However, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post-deprivation procedures will not, ipso facto, satisfy due process." *Hellenic Am. Neighborhood Action Comm.,* 101 F.3d at 880 (citing *Hudson,* 468 U.S. at 532; *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 435–36, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)).

If Schultz were alleging that Egan and Shipman acted in a "random and unauthorized" manner, then the availability of an Article 78 proceeding or a habeas proceeding would almost certainly suffice to satisfy the due process clause. However, Schultz argued in the District Court and argues on appeal that he was denied due process when the prison officials did not give him some form of hearing regarding his complaint that his sentence was miscalculated. Schultz's complaint is that the prison officials do not provide adequate process for addressing inmate complaints about the calculation of their sentences, and as a result of the inadequate procedures he was held past his release date. This claim, fairly read, is a challenge to established county procedures or practices, and thus the *Parratt–Hudson* doctrine is inapplicable. Instead, the three-factor test of *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), should be applied to determine what process was due to Schultz.*

■ There may well be administrative procedures in place for addressing prisoner complaints about miscalculated sentences that satisfy due process. However, because we are still at the motion to dismiss stage, defendants have submitted no factual information regarding what procedures they use. In addition, because we have no information before us which indicates how promptly inmates can have their grievances addressed through Article 78 proceedings, we cannot conclude at this stage of the lawsuit that the availability of Article 78 proceedings necessarily satisfies due process in this context.** *Cf. Sample v. Diecks,* 885 F.2d 1099, 1116 (3d Cir. 1989) (stating, in a case which involved a challenge by a prisoner to the state's incorrect calculation of his sentence, "that this record will not support a finding that

---

* The Supreme Court stated in *Mathews* that:

> [The] identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
> *Mathews,* 424 U.S. at 335.

** Prisoners can initiate Article 78 proceedings before their release date. *See Calhoun,* 999 F.2d at 653. However, Schultz points out that the court did not act until after his lawful release date had passed. Therefore, Schultz argues, the Article 78 proceeding did not provide sufficiently prompt resolution of his complaint to satisfy due process requirements.

the judicial remedies provided by the Commonwealth were alone sufficient to meet the requirements of due process"); *Toney–El v. Franzen,* 777 F.2d 1224, 1229 (7th Cir.1985) (holding that a full adversarial hearing was not necessary where the inmate challenged only the prison official's mathematical calculation of his sentence, and that "[t]he purely mathematical nature of these calculations makes written review an adequate opportunity to be heard for purposes of the due process clause"); *Haygood v. Younger,* 769 F.2d 1350, 1357 (9th Cir.1985) (en banc) (holding that when an inmate's release date is recalculated and extended, the inmate must be given a hearing). Reading Schultz's due process complaint liberally, as we must for *pro se* plaintiffs, we cannot conclude that "it appears beyond doubt that [Schultz] can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99.

It appears that the Report, which was adopted by the District Court, viewed Schultz's claims to be against Shipman and Egan in their individual capacity only, and not their official capacity. Viewing the claim as against defendants in their individual capacity only, the District Court, after holding that Schultz's complaint did not state a claim for a due process violation, held that in any event Schultz's complaint should be dismissed because defendants were entitled to qualified immunity. We conclude that the qualified immunity determination should await factual development about what administrative procedures were used.

█ In addition, we conclude that Schultz's complaint should not have been construed as against the defendants in their individual capacities only. Schultz's complaint named Elaine Egan, "Deputy Sheriff," and Roy Shipman, "Corrections Counselor," and did not specify whether the suit was against the defendants in their official capacities, their individual capacities, or both.*** We have said that "a plaintiff who has not clearly identified in her complaint the capacity in which the defendant is sued should not have the complaint automatically construed as focusing on one capacity to the exclusion of the other." *Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.1993). On remand, the District Court should determine whether Schultz intends to assert an official capacity claim against Egan and Shipman and the court can, if appropriate, require amendment of his complaint to provide greater notice to defendants. *See Ying Jing Gan v. City of N.Y.,* 996 F.2d 522, 530 (2d Cir.1993). We note that the Supreme Court explained in *Monell v. New York City Department of Social Services* that "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *accord Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

Thus far, Schultz has pursued his claims *pro se* and *in forma pauperis.* On remand, the District Court should consider appointing counsel to represent Schultz in the proceedings if Schultz requests such representation. *See* 28 U.S.C. § 1915(e)(1); *Hendricks v. Coughlin,* 114 F.3d 390, 393–94 (2d Cir.1997).

Accordingly, the judgment of the District Court is hereby AFFIRMED in part and VACATED and REMANDED in part.

---

*** We note that Schultz indicated in his "Application to Proceed Without Full Prepayment of Fees," which was filed at the same time as his complaint, that he was suing Egan and Shipman "individually and in their official capacity."