**Darrill DUPREE, Plaintiff,**

**v.**

**Flinora POUGH, et al., Defendants.**

**No. 04 Civ. 00992(RJH).**

United States District Court,
S.D. New York.

Sept. 29, 2006.

Joshua N. Stein, Eric Broutman, Greenberg & Stein, P.C., New York City, for Plaintiff.

Donald P. Delaney, New York State Department of Law, Office of the Attorney General, Michael S. Chestnov, New York City, for Defendants.

*MEMORANDUM OPINION AND ORDER*

HOLWELL, District Judge.

Plaintiff brought this action pursuant to 42 U.S.C. § 1983 against the City of New York, the New York City Department of Corrections, and New York State Parole Officer Flinora Pough, alleging false imprisonment and due process violations. Defendants City of New York and the New York City Department of Corrections previously moved for summary judgment. After the Court granted the City's motion, Pough filed the present motion for summary judgment. In plaintiff's opposition to this motion, he has requested leave to amend his complaint to add the New York State Division of Parole as a defendant.

For the reasons set forth below, the Court grants Pough's motion for summary judgment [37] and denies plaintiff leave to amend his complaint.

## BACKGROUND

Unless otherwise indicated, the following facts are undisputed and taken in the light most favorable to plaintiff.

Plaintiff was sentenced for burglary in state court, Queens County, New York, in August 1995 and attempted burglary in state court, Richmond County, New York, in February 1996. (Compl.¶ 7.) He was released on parole on February 14, 2002, subject to supervision by the New York State Division of Parole, and his maximum parole expiration date was March 18, 2003. (*Id.* at ¶¶ 8–9.) As a special condition of his release, plaintiff was directed to attend a community drug treatment program, but he was discharged in December of 2003 for lack of attendance and drug use. (Def. 56.1 Statement ¶¶ 6–7.) Dupree also failed to attend a meeting with his parole officer on December 17, 2002. (Compl.¶ 10.) Parole Officer Reid prepared a violation release report, charging plaintiff with five parole violations. (Def.Ex.B.) On January 30, 2003, Senior Parole Officer Pough reviewed the report and issued Parole Warrant # 371358. (Pl. 56.1 Statement ¶¶ 4–6; Def. Ex. M.)

Because plaintiff absconded, his case was transferred to the absconder search unit. (Def. Mot. for Summ. J. 2.) On February 6, 2003, a Parole Board commissioner declared plaintiff delinquent as of December 17, 2002, the date of his first

alleged parole violations. (Def. 56.1 Statement ¶ 14; Def. Ex. E.) On March 4, 2003, plaintiff was finally arrested and remanded to the custody of the City DOC on Rikers Island. (Def. 56.1 Statement ¶ 11.)

State parole violators who are to be held beyond their original maximum expiration dates are provided with both a preliminary and final parole revocation hearing before the state parole board. Plaintiff waived his preliminary parole revocation hearing on the same day of his arrest. (Def. 56.1 Statement ¶ 12; Def. Ex. C, G.) The City DOC produced the plaintiff for his final parole revocation hearing on March 14 and March 21, 2003 (Pl. 56.1 Statement ¶ 8), but for reasons that are unclear from the record before the Court, these hearings were adjourned to April 24, 2003. On April 24, plaintiff's attorney requested an adjournment to May 29, 2003 because the New York State Division of Parole was applying for a cancellation of delinquency. (Def. Ex. I; Pl. Opp'n to Mot. for Summ. J. ("Pl.Opp'n") 4.) The final parole revocation hearing was then scheduled for May 29, 2003. (Pl. 56.1 Statement ¶ 8.) On May 12, 2003, prior to the scheduled hearing, the Division of Parole cancelled the delinquency and lifted the warrant, and DOC released the plaintiff from custody on that date. (Defs.' 56.1 Statement ¶¶ 11–13, 20–22.)

## DISCUSSION

### 1. *Summary Judgment Standard*

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Of course, a "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Quarles v. Gen. Motors Corp. (Motors Holding Div.),* 758 F.2d 839, 840 (2d Cir.1985) ("[T]he mere existence of factual issues—where those issues are not material to the claims before the court—will not suffice to defeat a motion for summary judgment."). In short, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

On a motion for summary judgment, the Court is required to view the facts in the light most favorable to the nonmoving party and to make all reasonable inferences in this party's favor. *See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The initial burden rests with the moving party to make a prima facie showing that no material fact issues exist for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once this showing is made, the burden falls on the nonmoving party to demonstrate that a material fact issue does exist, thus mandating a trial. *Id.* While the nonmoving party may defeat a motion for summary judgment by establishing that there is a legitimate fact issue for trial, it "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348 (citing *De Luca v. Atl. Ref. Co.,* 176 F.2d 421, 423 (2d Cir.1949)).

### 2. *Plaintiff's Claims*

In his complaint, plaintiff alleges that Pough issued the arrest warrant for Dupree's failure to appear at a December 17,

2002 meeting with his parole officer. Plaintiff then states two causes of action against Pough: a claim of false imprisonment, and a claim that Pough "violated Dupree's due process rights ... by knowingly and recklessly failing to provide Dupree with an opportunity to contest the parole violation charges against him prior to his maximum revocation date," thus "knowingly and/or recklessly allow[ing] Dupree to be imprisoned unlawfully from March 18, 2003 until May 12, 2003." The Court addresses each of these claims in turn.

a. *False Imprisonment*

To establish a prima facie case of false imprisonment, "plaintiff must demonstrate that defendant intended to confine him, he was conscious of the confinement, he did not consent to the confinement, and the confinement was not otherwise privileged." *Shain v. Ellison,* 273 F.3d 56, 67 (2d Cir.2001); *Curley v. AMR Corp.,* 153 F.3d 5, 13 (2d Cir.1998). As the Court noted in its prior opinion in this case, plaintiff here was lawfully detained pursuant to a facially valid warrant issued by the New York State Division of Parole. *See Dupree v. City of New York,* 418 F.Supp.2d 555 (S.D.N.Y.2006). "It is settled that such a privileged confinement will not give rise to an action against the entity that detained plaintiff." *Id.* In his opposition papers, plaintiff did not address the false imprisonment claim or allege that his parole violation arrest was illegal. Accordingly, the Court finds that plaintiff's false imprisonment claim against Pough fails.

b. *Procedural Due Process*

In his complaint, plaintiff's only specific factual allegation regarding Pough is that she issued the arrest warrant. (Compl. ¶ 11; Def. Ex. M.) Pough does not dispute that she also signed the violation release report prepared by Parole Officer Reid and the declaration of delinquency. (Def.Exs.B, E.) Plaintiff does not challenge the validity of the violation release report, the arrest, or the declaration of delinquency; his sole arguments concern the invalidity of the period of confinement following the original maximum expiration date, March 18, 2003, and his release from prison on May 12, 2003. Accordingly, the court construes the complaint as asserting that Pough violated plaintiff's constitutional rights by leaving extant the January 30, 2003 parole warrant forty-seven days past his maximum expiration date. *See Parker v. Chin,* No. 04 CV 3901(TPG), 2006 WL 1379613, at *3, 2006 U.S. Dist. LEXIS 30675, (S.D.N.Y. May 18, 2006).

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (citation and internal quotation marks omitted). Because personal involvement is a question of fact, a district court may grant summary judgment "only if no issues of material fact exist and the defendant is entitled to judgment as a matter of law." *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986).

New York's procedures for punishing parole violations are set forth generally at N.Y. Exec. Law § 259–i (McKinney 2006). If a parole officer believes that a parolee, such as Dupree, has violated one or more conditions of his post-release supervision, the parole officer, in consultation with a senior parole officer, may issue a warrant for his arrest. *Id.* § 259–i(3)(a)(i). The statute further permits the supervising parole officer to declare a parolee "delinquent" as of the date of the first parole violation if a "parole officer has reasonable cause to believe that such person has absconded from supervision." *Id.* § 259–i(3)(c)–(d)(i); 9 N.Y. Comp.Codes R. &

Regs. ("NYCCRR") § 8004.3 (describing circumstances under which a delinquency determination may be made). The effect of a declaration of delinquency is set forth in N.Y. Penal Law § 70.40, which provides that "the declaration of delinquency shall interrupt the person's sentence as of the date of the delinquency and such interruption shall continue until the return of the person to an institution under the jurisdiction of the state department of correctional services." *Id.* Where a sentence has been interrupted by a declaration of delinquency, the term of the prisoner's sentence is then extended, beyond the original maximum expiration date, for a period of time equal to the interruption period. *See Tineo v. N.Y. State Div. of Parole,* 14 A.D.3d 949, 787 N.Y.S.2d 916 (N.Y.App. Div.3d Dep't 2005). In addition, if a parolee has less than six months of post-release supervision left at the time of the parole violation and return to custody, that person's remaining time in custody "shall be six months unless a longer period is authorized." N.Y. Penal Law § 70.45(5)(d).[1]

Within three days of the execution of a parole warrant, the alleged violator must be given a Notice of Violation advising him of the time, place and purpose of a preliminary hearing, as well as the violations charged and certain rights to which he is entitled at the preliminary hearing. N.Y. Exec. Law § 259–i(3)(c)(3). The parolee is entitled to a preliminary hearing within fifteen days to determine whether probable cause exists to believe the parolee has violated one or more of his parole conditions in an important respect, *id.* § 259–i(3)(c)(i), or a parolee may waive his right to a preliminary hearing, 9 NYCCRR § 8005.6(b). If the parolee waives his right to a preliminary hearing, a final revocation hearing must be held within 90 days of that waiver. *See Evans v. Travis,* No. 95 Civ. 4152, 2000 WL 1195691, at *1, 2000 U.S. Dist. LEXIS 11995 (S.D.N.Y. May 9, 2000) (Eaton, M.J.), *report & recommendation adopted,* 2000 WL 1195691, 2000 U.S. Dist. LEXIS 11996 (S.D.N.Y. Aug. 21, 2000). However, if an alleged violator requests and receives any postponement of his revocation hearing, or consents to a postponed revocation proceeding initiated by the board, or if an alleged violator, by his actions otherwise precludes the prompt conduct of such proceedings, the time limit may be extended. N.Y. Exec. Law § 259–i(3)(f)(i).

Here, on February 5, 2003 the State Division of Parole found reasonable cause to believe that plaintiff had absconded. In accordance with the Division of Parole regulations described above, Pough declared plaintiff delinquent as of December 17, 2002 and signed the declaration. (Def.Ex.E.) Plaintiff was subsequently arrested on March 4, 2003, making the interruption period seventy-seven days. Accordingly, the term of plaintiff's sentence at the time he was returned to custody was presumptively seventy-seven days longer, making June 3, 2003 his adjusted maximum expiration date.[2] Indeed, plaintiff could have been held a full six months following his return to custody, or until

1. Plaintiff argues that the maximum sentence that plaintiff could have been required to serve following a determination at a final revocation hearing was the "balance of the remaining period of post-release supervision." N.Y. Penal Law § 70.45(1). (Pl. Opp'n at 4–5.) Plaintiff's argument errs for two reasons: First, the section quoted applies to determinate sentences only, and plaintiff was serving an indeterminate sentence of four to eight years. Second, plaintiff's argument ignores the calculation for delinquency, described above.

2. For reasons that are unclear on the record before the Court, the Division of Parole calculated the adjusted maximum expiration date to be June 5, 2003 (Def.Ex.G), but that difference is not relevant here.

September 4, 2003, had the Division of Parole affirmed his parole violations at a final hearing. The deadline for holding the final revocation hearing would have been June 2, 2003, ninety days after the date on which plaintiff waived his right to a preliminary hearing. However, because the plaintiff requested an adjournment of the final revocation hearing on April 24 to May 29, the hearing deadline may have been extended further, in accordance with N.Y. Exec. Law § 259–i(3)(f)(i).

The wrinkle in plaintiff's case is that on May 12, 2003, the Division of Parole dismissed the charges against plaintiff and plaintiff was released from prison. When the charges that lead to the declaration of delinquency are dismissed, the delinquency is "canceled," meaning that the original maximum expiration date is reinstated. N.Y. Exec. Law § 259–i(3)(f)(ix). Plaintiff therefore argues that his confinement past March 18, 2003 violated his right to procedural due process.

The Court rejects plaintiff's argument. Between the time of his arrest and the date of his release, plaintiff was held on a valid arrest warrant pending his final revocation hearing, in accordance with New York law. On April 24, 2003, plaintiff, his attorney, and a parole revocation specialist from the Division of Parole all appeared before the administrative law judge, prepared to proceed with plaintiff's final revocation hearing. At that time, *plaintiff* requested an adjournment on the ground that the Division of Parole was preparing to lift the arrest warrant and release plaintiff. Had plaintiff proceeded with the final revocation hearing instead of requesting its adjournment, the judge would either have declared plaintiff in violation of his parole, in which case plaintiff would have remained in prison as explained above. *See* N.Y. Exec. Law 259–i(f)(ix)–(x). Alternatively, if the judge had dismissed the alleged parole violations, plaintiff might have had a procedural due process claim under *Calhoun* if the State Division of Parole could not prove that holding a final hearing before March 18, 2006 would have been impracticable. *See Calhoun v. New York State Div. of Parole Officers,* 999 F.2d 647, 653 (2d Cir.1993) (stating that where Division of Parole cancels delinquency and releases prisoner on adjusted maximum expiration date, prisoner has a procedural due process claim unless the state can prove that holding a final revocation hearing before the original maximum expiration date is "impracticable"). Here, however, plaintiff, not the Division of Parole, prevented the judge from deciding the validity of the parole violations and the adjusted maximum expiration date. Thus, neither the Division of Parole, Pough, and the "John and Jane Does" named in the Complaint "fail[ed] to provide Dupree with an opportunity to contest the parole violation charges against him prior to his maximum revocation date," as he alleges. Plaintiff's request for an adjournment effectively served as a waiver of his right to contest the validity of his confinement up to the adjournment date of May 29, 2003.

To the extent that plaintiff can state a procedural due process challenge to his period of confinement between the original maximum expiration date and the date on which he requested an adjournment (during which the final revocation hearing was adjourned twice for reasons that are unclear), plaintiff has not alleged what role, if any, Pough had in allowing the parole warrant to remain extant during this period. Defendant argues, and plaintiff does not dispute, that Pough's last involvement with plaintiff's case was on January 30, 2003—forty-seven days *before* the maximum expiration date, the date on which the alleged constitutional violations began. Pough might have been a proper defendant had plaintiff challenged the validity of the arrest that terminated his parole and re-

turned him to confinement. Here, however, plaintiff does not challenge the validity of the arrest; his sole arguments concern the invalidity of the period of confinement following the original maximum expiration date, March 18, 2003, and his release from prison on May 12, 2003. Accordingly, the Court grants Pough's motion for summary judgment.[3]

### 3. *Plaintiff's Motion for Leave to Amend His Complaint Is Denied*

Plaintiff has requested leave to amend his complaint to add the New York State Division of Parole as a defendant. As the Court finds that leave to amend would be futile, the Court declines to grant plaintiff leave to amend.

#### a. *Requirements for Amendments of Pleadings*

Rule 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. Proc. 15(a). Leave to amend should be granted unless there is "any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *see also Commander Oil Corp. v. Barlo Equip. Corp.,* 215 F.3d 321, 333 (2d Cir.2000) (noting that leave to amend is "discretionary" and should be "freely given"); *Block v. First Blood Assocs.,* 988 F.2d 344, 350 (2d Cir.1993) ("The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith.").

However, an "appropriate basis for denying leave to amend is that the proposed amendment is futile." *Lucente v. IBM Corp.,* 310 F.3d 243, 258 (2d Cir. 2002) (citing *Nettis v. Levitt,* 241 F.3d 186, 193 (2d Cir.2001)); *see also Foman,* 371 U.S. at 182, 83 S.Ct. 227; *Ellis v. Chao,* 336 F.3d 114, 127 (2d Cir.2003). "A proposed amendment to a pleading [is] futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Oneida Indian Nation v. City of Sherrill,* 337 F.3d 139, 168 (2d Cir.2003), *rev'd on other grounds,* 544 U.S. 197, 125 S.Ct. 1478, 161 L.Ed.2d 386 (2005); *see also Lucente,* 310 F.3d at 258 (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir.2002)); *Health-Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990) ("[W]here ... there is no merit in the proposed amendments, leave to amend should be denied.").

#### b. *Statute of Limitations*

The applicable statute of limitations for § 1983 claims in New York is three years, which begins to run from the moment plaintiff is aware of the injury on which the claim is based. *Jaghory v. New York State Dept. of Educ.,* 131 F.3d 326, 331–32 (2d Cir.1997). Plaintiff became aware of his injury on the date that the Division of Parole cancelled his delinquency, May 12, 2003, so the relevant limitations period on his § 1983 claim expired on May 19, 2006. Therefore, the proposed amendment is time-barred unless it "relates back" to the original complaint. *See* Fed.R.Civ.P. 15(c); *VKK Corp. v. Nat'l Football League,* 244 F.3d 114, 128 (2d Cir.2001) ("If a complaint is amended to include an additional defendant after the statute of limitations has run, the amended complaint is not time barred if it 'relates

3. Because the Court has found that plaintiff's claims against Pough fail, the Court need not address defendant's arguments regarding her qualified immunity or sovereign immunity.

back' to a timely filed complaint."); *Hickey v. City of New York,* No. 01 Civ. 6506, 2004 WL 736896, 2004 U.S. Dist. LEXIS 5753 (S.D.N.Y. Apr. 5, 2004) (Maas, M.J.) (same).

c. *Relation Back*

Under Rules 15(c)(2) and (3), an amendment changing the name of a defendant relates back to the original pleading if the claims against the new party arise out of the same conduct or occurrence set forth in the original pleading, and, "within the period provided by Rule 4(m) for service of the summons and complaint," the new defendant (1) had received such *notice* of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a *mistake* concerning the identity of the proper party, the action would have been brought against the new defendant. Fed.R.Civ.P. 15(c)(2)-(3). *See Soto v. Brooklyn Correctional Facility,* 80 F.3d 34, 35 (2d Cir.1996); *Scott v. Coughlin,* 944 F.Supp. 266, 270 (S.D.N.Y.1996); *Byrd v. Abate,* 964 F.Supp. 140, 145 (S.D.N.Y. 1997). Here, the claim that plaintiff seeks to assert against the Division of Parole arose out of the occurrences set forth in the original Complaint, and the Division of Parole is presumptively on notice of the complaint because Senior Parole Officer Pough was a defendant. Therefore, the question as to whether a proposed amendment would relate back to the filing of the Complaint turns on whether plaintiff's failure to name the Division of Parole in his original complaint was a "mistake concerning the identity of the proper party" within the meaning of Rule 15(c)(3)(B).

The Second Circuit has made clear that where a plaintiff can show that he misapprehended the identity of the person he wished to sue (a factual mistake), or failed to understand the legal requirements of his claim (a legal mistake), then the claim satisfies the "mistake" requirement of Rule 15(c)(3) and relates back to the original pleading. *See Soto,* 80 F.3d at 35; *Barrow v. Wethersfield Police Dep't,* 66 F.3d 466, 469 (2d Cir.1995). In *Soto,* a pro se plaintiff sought to add individual corrections officers to his original § 1983 complaint, which had asserted claims solely against the Brooklyn Correctional Facility. The Second Circuit noted that the plaintiff's complaint was legally insufficient without the individual officers, and granted the plaintiff leave to amend because, "but for his mistake as to the technicalities of constitutional tort law, he would have named the officers in the original complaint." *Id.* at 37.

Here, by contrast, plaintiff's original complaint was entirely sufficient without a § 1983 claim against the Division of Parole. Dupree's case is more analogous to *Cornwell v. Robinson,* 23 F.3d 694, 705 (2d Cir.1994), in which the court denied a motion to amend because the plaintiff's original complaint was legally adequate with respect to the defendants already named. In *Cornwell,* the plaintiff knew the identities of the individual defendants that she named in her amended complaint from the time she filed her original complaint. The Second Circuit found that because the plaintiff was not required to sue them, "her failure to do so in the original complaint ... must be considered a matter of choice, not mistake." *Cornwell,* 23 F.3d at 705; *see also Martinez v. Robinson,* No. 99 Civ. 11911, 2001 WL 498407, at *4, 2001 U.S. Dist. LEXIS 5932 (S.D.N.Y. May 10, 2001) (Francis, M.J.) (denying plaintiff leave to amend § 1983 complaint to name City as a defendant where plaintiff named individual corrections officers in his original complaint).

has also named "John and/or Jane Does" as defendants in this action. Amending the complaint to name

individual defendants in place of these unnamed defendants is also time-barred under *Barrow.* 66 F.3d at 470 (holding that where "new names [are] added not to correct a mistake but to correct a lack of knowledge, the requirements of Rule 15(c) for relation back are not met").

Accordingly, plaintiff's claims do not relate back to the date of his original complaint and are thus time-barred.[4]

## CONCLUSION

For the foregoing reasons, Pough's motion for summary judgment [37] is granted, and plaintiff's request to amend his complaint is denied. The Clerk of the Court is directed to close this case.

SO ORDERED.

4. Because the Court has found that any amendments to plaintiff's Complaint are time-barred, the Court need not address defendant's argument that plaintiff's claims are barred by the rule of *Heck v. Humphrey,* 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).