21-2792-pr
*Michael Matzell v. Anthony J. Annucci et al.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

───────────────

August Term 2022

(Argued:  October 12, 2022      Decided:  April 4, 2023)

Docket No. 21-2792-pr

───────────────

MICHAEL MATZELL, individually and on behalf of all others similarly situated,

*Plaintiff-Appellee,*

*v.*

ANTHONY J. ANNUCCI, Acting DOCCS Commissioner, JEFFREY MCKOY, Deputy
DOCCS Commissioner, BRUCE YELICH, Superintendent, STANLEY BARTON,
Deputy Superintendent of Programs, KAY HEADING SMITH, Coordinator,
ELIZABETH LARAMAY, JANE BOYEA, Coordinator,

*Defendants-Appellants.*

JOHN AND JANE DOES 1-10,

*Defendants.*

───────────────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

───────────────

Before:      LEVAL, CHIN, and LEE, *Circuit Judges.*

───────────────

Interlocutory appeal from a decision and order of the United States District Court for the Northern District of New York (Hurd, *J.*), denying the motion of defendants-appellants -- seven New York State prison officials -- for judgment on the pleadings on the ground of qualified immunity. Plaintiff-appellee, a former New York State prisoner, sued defendants-appellants pursuant to 42 U.S.C. § 1983 for purportedly violating his rights under the Eighth and Fourteenth Amendments when they denied his judicially ordered enrollment in New York's Shock Incarceration Program, thereby potentially extending his period of confinement. The district court denied the motion for judgment on the pleadings, holding that plaintiff-appellee plausibly alleged that defendants-appellees were not entitled to qualified immunity because they violated clearly established law.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

LAURA ETLINGER, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, *and* Jeffrey W. Lang, Deputy Solicitor General, *on the brief*), for Letitia James, Attorney General of the State of New York, Albany, New York, *for Defendants-Appellants*.

DEBRA L. GREENBERGER (Katherine R. Rosenfeld *and* Vivake Prasad, *on the brief*), Emery Celli

Brinckerhoff Abady Ward & Maazel, LLP, New York, New York, *for Plaintiff-Appellee*.

CHIN, *Circuit Judge*:

On July 9, 2015, plaintiff-appellee Michael Matzell was sentenced in New York state court to four years' imprisonment followed by three years of post-release supervision for a controlled substance offense. The sentencing judge, pursuant to his authority under New York Penal Law § 60.04(7), ordered Matzell's enrollment in the Shock Incarceration Program ("Shock"), a six-month bootcamp program that, if successfully completed, allows inmates to be released from prison early. Once Matzell became time-eligible for enrollment in Shock, defendants-appellants -- the Acting Commissioner and Deputy Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS") and five staff members at the correctional facility where Matzell was housed (collectively, "Defendants") -- denied his admission to Shock because of disciplinary "tickets" he had received for drug use while in prison.[1]

---

[1] Matzell also named as defendants John and Jane Does 1-10 -- DOCCS training, supervisory, and policy making personnel who implemented, enforced, or perpetuated the policy of applying exclusionary rules to those judicially sentenced to Shock. **[JA 32]**

3

Matzell brought a 42 U.S.C. § 1983 putative class action against Defendants alleging that they violated his rights under the Eighth and Fourteenth Amendments.[2]  Defendants filed a motion for judgment on the pleadings, contending that they are entitled to qualified immunity as a matter of law.  The district court denied the motion, holding that Matzell plausibly alleged a violation of clearly established constitutional law.  Defendants appeal.

We hold that Defendants are entitled to qualified immunity on the Eighth Amendment claim but not on the Fourteenth Amendment claim. Accordingly, we AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

---

[2]      Matzell sued on behalf of individuals convicted in New York whose sentences included a judicial order that they be enrolled in Shock, but whom DOCCS excluded or will exclude from Shock.  Matzell's class action complaint does not specify whether his Fourteenth Amendment claim relates to substantive or procedural due process.  The parties agree, however, that Matzell's claim sounds in substantive rather than procedural due process.  Appellants' Br. at 40 ("[P]laintiff's claim here sounds in substantive due process, rather than procedural due process, because he was not denied any process under these facts."); Appellee's Br. at 51 n.13 ("As Defendants recognize, Plaintiff's due process right to serve the sentence imposed by the sentencing court -- and not the sentence imposed by the prison officials -- sounds more clearly in substantive, rather than procedural, due process." (internal citation omitted)).  Accordingly, we evaluate the claim as a substantive rather than procedural due process claim.

4

## BACKGROUND

### I. Shock

Shock is a six-month intensive bootcamp program administered by DOCCS that allows inmates to receive rehabilitation and reintegration services. Upon successful completion of the program, participants are released from prison before the conclusion of their sentence. To be eligible for Shock, an inmate must be sentenced to a term of imprisonment that permits his release within three years; he must be under fifty years old; and he must not have been convicted of certain violent felonies. N.Y. Correct. Law § 865(1) (McKinney 2022).[3]

---

[3] "'Eligible inmate' means a person sentenced to an indeterminate term of imprisonment who will become eligible for release on parole within three years or sentenced to a determinate term of imprisonment who will become eligible for conditional release within three years, who has not reached the age of fifty years, who has not previously been convicted of a violent felony as defined in article seventy of the penal law, or a felony in any other jurisdiction which includes all of the essential elements of any such violent felony, upon which an indeterminate or determinate term of imprisonment was imposed and who was between the ages of sixteen and fifty years at the time of commission of the crime upon which his or her present sentence was based. Notwithstanding the foregoing, no person who is convicted of any of the following crimes shall be deemed eligible to participate in this program: (a) a violent felony offense as defined in article seventy of the penal law, (b) an A-I felony offense, (c) any homicide offense as defined in article one hundred twenty-five of the penal law, (d) any felony sex offense as defined in article one hundred thirty of the penal law and (e) any escape or absconding offense as defined in article two hundred five of the penal law." N.Y. Correct. Law § 865(1) (McKinney 2018).

Before 2009, DOCCS had sole authority to determine an individual's eligibility for Shock and had broad discretion to admit or exclude individuals based on its own criteria. In 2009, however, the New York State Legislature passed the Drug Law Reform Act of 2009 (the "DLRA"), 2009 N.Y. Laws ch. 56, which amended N.Y. Penal Law § 60.04 and gave sentencing judges the power to sentence defendants to enrollment in Shock.

N.Y. Penal Law § 60.04(7)(a) provides that "the court may issue an order directing that [DOCCS] enroll the defendant in the shock incarceration program as defined in [Article 26-a] of the correction law" and further provides that "any defendant to be enrolled in such program . . . shall be governed by the same rules and regulations promulgated by [DOCCS], including without limitation those rules and regulations establishing requirements for completion and such rules and regulations governing discipline and removal from the program." N.Y. Penal Law § 60.04(7)(a) (McKinney 2022).[4]

N.Y. Correction Law § 867(2-a) provides that when an individual is judicially sentenced to Shock, state prison officials may only screen out the

---

[4]     The portions of N.Y. Penal Law § 60.04(7) quoted and cited herein have remained the same since their passage in 2009, except the word "inmate" was subsequently replaced with "incarcerated individual" throughout.

6

individual when the individual "has a medical or mental health condition" that would prevent successful completion of the program. N.Y. Correct. Law § 867(2-a) (McKinney 2022).[5] If an incarcerated individual who has been judicially ordered to Shock has a medical or mental health condition that would render him unable to complete the program, DOCCS must notify the individual and propose "an alternative-to-shock incarceration program" offering the same early-release benefits. N.Y. Penal Law § 60.04(7)(b)(i)-(ii) (McKinney 2022).

## II. *The Facts*

The following facts are drawn from Matzell's complaint, except as otherwise noted.

### A. *The Sentence*

On May 20, 2015, Matzell pleaded guilty in the St. Lawrence County Court to possession of a controlled substance in the third degree. In a colloquy with the Assistant Attorney General and Assistant Public Defender, the court explained that "a question arose concerning if the defendant's unsatisfied parole sentence would affect . . . his ability to be eligible for Shock Incarceration."

---

[5] The portions of N.Y. Correction Law § 867 quoted and cited herein were the same in 2018, except the word "inmate" was subsequently replaced with "incarcerated individual" throughout.

J. App'x at 81. After telephoning DOCCS to clarify Matzell's eligibility for Shock, the court revised the proposed sentence to include enrollment in Shock, and the Assistant Attorney General agreed to the revision. Accordingly, the court remarked: "[A]ll parties are satisfied with the Court's commitment to sentence the defendant as a second felony drug offender to a determinate term of four years, plus three years of post-release supervision, ordered to the Shock Incarceration Program." *Id.* at 82.

At the sentencing on July 9, 2015, the Assistant Public Defender requested a "negotiated sentence of four years, with three years of post-release supervision, determinate sentence, with additional order to shock." *Id.* at 98. The court imposed the sentence as follows: "It is the judgment of the Court that defendant . . . be sentenced to a determinate term of imprisonment with [DOCCS for] four years. . . . In addition, he is sentenced to three years of post-release supervision. That sentence is directly to the shock -- or to the shock incarceration program." *Id.* at 100. In the sentence and commitment order, the court wrote: "SHOCK INCARCERATION Ordered [PL 60.04(7)]." *Id.* at 42.

### B.     *DOCCS's Implementation of the Sentence*

On July 16, 2015, Matzell entered DOCCS custody to begin his sentence. As he neared his Shock eligibility date of January 18, 2018 -- three years before his earliest conditional release date of January 18, 2021 -- Matzell contacted a DOCCS coordinator to inquire about his upcoming enrollment in Shock. On August 25, 2017, the DOCCS coordinator informed him that, despite the court's judgment and sentence, he could not be enrolled in Shock because of disciplinary tickets he had received for substance abuse while incarcerated. Matzell next contacted the deputy superintendent of programs who informed him on September 15, 2017, that he was not eligible for enrollment due to the disciplinary tickets. Thereafter, the rehabilitation coordinator and the deputy commissioner for program services wrote to Matzell, on September 25, 2017, and December 15, 2017, respectively, stating that his drug tickets excluded him from Shock and that he did not meet the "suitability criteria" for the program. J. App'x at 45.

Finally, on January 5, 2018, the offender rehabilitation coordinator screened Matzell and concluded that he was not suitable for Shock for disciplinary reasons. Before and after this final determination, Matzell's counsel

9

sent letters to the superintendent of the facility, the deputy commissioner, the deputy superintendent of programs, and the offender rehabilitation coordinator, explaining that Matzell's sentence mandated enrollment in Shock absent disqualifying medical or mental health conditions. None of the DOCCS officials had articulated or identified medical or mental health conditions in their communications.

## C. *The Article 78 Proceedings*

On May 8, 2018, after exhausting his administrative avenues of relief, Matzell commenced an Article 78 proceeding in New York State Supreme Court, Albany County, against defendant-appellant Anthony J. Annucci, the Acting DOCCS Commissioner, challenging DOCCS's determination that he was ineligible for enrollment in Shock. On March 7, 2019, the court ordered DOCCS to enroll Matzell in Shock within thirty days, holding that "the controlling statutes do not permit DOCCS to administratively bar an inmate from entering the shock program when shock has been judicially ordered. To do so constitutes an administrative alteration of a sentence, which is not permitted." *Matzell v. Annucci*, No. 3111-18, 2019 WL 12498103, at *3 (N.Y. Sup. Ct. Albany Cnty. Mar. 7, 2019). The court also stated that the DLRA created "clear statutory mandates"

10

eliminating DOCCS's discretion in cases of judicially ordered Shock, *id.* at *2, and

cited cases from the New York State Court of Appeals and the Third Department

decided in 2008, *id.* at *3, which held that DOCCS could not administratively

alter a sentence.

Annucci appealed the court's order, thereby invoking an automatic

stay of the judgment. Matzell moved to vacate the stay, and the Third

Department granted his motion on May 31, 2019.

On February 27, 2020, the Third Department affirmed the Supreme

Court's March 7, 2019 order in full, holding that Defendants' interpretation of

Penal Law § 60.04(7) was unreasonable and inconsistent with the statute. *See*

*Matzell v. Annucci*, 121 N.Y.S.3d 153, 158 (3d Dep't 2020). Applying principles of

statutory construction and based on the plain language of the statute, the court

explained:

> Notably, prior to the enactment of the DLRA, DOCCS made the ultimate
> determination regarding an inmate's enrollment in the program. The
> DLRA clearly and specifically changed that mandate.
>
> . . .
>
> Once an inmate has been judicially ordered into the program, DOCCS'
> participation under Penal Law § 60.04(7) is expressly limited to its
> administration of the program, i.e., the completion, discipline and removal
> of an inmate from the program. If the Legislature intended DOCCS to

11

have administrative discretion as to the eligibility criteria, it could have said so. It is a canon of statutory interpretation that a court cannot by implication supply in a statute a provision that it is reasonable to suppose the Legislature intended to omit. . . . DOCCS' interpretation would permit it to administratively modify a criminal sentence, rendering the Legislature's grant of judicial authority under the statute meaningless and hamper the purpose of the statute under the DLRA.

*Id.* at 157-58 (internal citations omitted).

On July 9, 2021, Matzell was awarded attorneys' fees in connection with the Article 78 proceedings. *Matzell v. Annucci*, Decision and Order, No. 3111-18 (N.Y. Sup. Ct. Albany Cnty. Apr. 6, 2021). Defendants argued that the award of attorneys' fees was not warranted because their interpretation of New York Penal Law § 60.04(7) was reasonable. *Id.* at 3. The court concluded, however, that Defendants' interpretation was not reasonable because it was contrary to the plain statutory text and would nullify the statute's purpose. *Id.*

### D. *Matzell's Enrollment in Shock*

DOCCS finally enrolled Matzell in Shock on June 7, 2019 -- 506 days after he actually became eligible for the program. On December 24, 2019, some six-and-a-half months later, after an injury caused him to be reassigned to an alternative-to-shock program, Matzell completed the program and was immediately granted early conditional release. As alleged in his complaint, if

12

Matzell had been enrolled in Shock when he became eligible on January 18, 2018, he could have completed the program and been released from prison 506 days earlier.

## III.    *The Proceedings Below*

On November 25, 2020, Matzell commenced this § 1983 action against Defendants, alleging that they violated his Eighth and Fourteenth Amendment rights.  Defendants moved for judgment on the pleadings.  On October 7, 2021, the district court denied Defendants' motion.  In doing so, the district court did not consider whether Matzell sufficiently pleaded violations of his constitutional rights, as Defendants did not address that part of the qualified immunity inquiry.  The district court held, however, that in light of Defendants' awareness of the DLRA, the DRLA's plain language, existing Second Circuit precedent, and earlier state court decisions, Matzell plausibly alleged that Defendants' refusal to enroll him in Shock violated clearly established law.

This appeal followed.[6]

---

[6]    "[W]here a district court denies a defendant qualified immunity, there is appellate jurisdiction over that defendant's interlocutory appeal if the defendant contests the existence of a dispute or the materiality as a matter of law, or contends that he is entitled to qualified immunity even under the plaintiff's version of the facts." *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 712 (2d Cir. 2022).  In arguing on their motion for

## DISCUSSION

The standard for reviewing a motion for judgment on the pleadings is the same as that for a motion to dismiss. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006). We review a district court's decision on a motion for judgment on the pleadings *de novo*, accepting the material facts alleged in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 178 (2d Cir. 2013).

To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). A claim is plausibly alleged "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Matzell alleges that Defendants violated his Eighth and Fourteenth Amendment rights by denying his judicially ordered enrollment in Shock.

judgment on the pleading that they are protected by qualified immunity, both below and in this court, Defendants do not dispute Matzell's asserted facts. Accordingly, we have jurisdiction over this interlocutory appeal.

14

Defendants contend that they are entitled to qualified immunity and ask this Court to reverse the district court's denial of their motion for judgment on the pleadings. First, we discuss the doctrine of qualified immunity. Then, we discuss the Eighth Amendment and Fourteenth Amendment claims, concluding that Defendants are entitled to qualified immunity on the Eighth Amendment claim but not on the Fourteenth Amendment claim.

I.    *Qualified Immunity*

Qualified immunity shields government officials from liability for money damages for violation of a right under federal law if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It allows government officials to make reasonable judgments and is said to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Qualified immunity bars a plaintiff's claim unless (1) the official violated a statutory or constitutional right, and (2) that right was clearly established at the time of the challenged conduct. *Francis v. Fiacco*, 942 F.3d 126, 139 (2d Cir. 2019). "Courts have discretion to decide which of the two prongs to address first, but if the complaint fails to

sufficiently plead the violation of a constitutional right, the second question is moot." *Nat'l Rifle Ass'n of Am. v. Vullo*, 49 F.4th 700, 714 (2d Cir. 2022) (internal citations omitted).

A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011). To determine whether a law is clearly established, this Court considers "the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014). The Supreme Court has emphasized that its case law does not "require a case directly on point" but that "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *see Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam); *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam).

"Although qualified immunity defenses are often decided on motions for summary judgment, in appropriate circumstances a district court

16

may address qualified immunity at the pleadings stage." *Vullo*, 49 F.4th at 714

(citing *Drimal v. Tai*, 786 F.3d 219, 225 (2d Cir. 2015)). We have recognized,

however, that a qualified immunity defense "faces a formidable hurdle" at the

motion to dismiss stage "and is usually not successful." *Sabir v. Williams*, 52 F.4th

51, 64 (2d Cir. 2022) (citation omitted); *see also Green v. Maraio*, 722 F.2d 1013, 1018

(2d Cir. 1983) ("Usually, the defense of qualified immunity cannot support the

grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can

be granted."). Where a defendant presents a qualified immunity defense on a

motion to dismiss or, as here, for judgment on the pleadings, "the plaintiff is

entitled to all reasonable inferences from the facts alleged, not only those that

support his claim, but also those that defeat the immunity defense." *McKenna v.

Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

## II. *The Eighth Amendment Claim*

We conclude that Matzell's Eighth Amendment claim fails at the

second prong of the qualified immunity analysis: it was not clearly established

at the time of Defendants' conduct that denying a prisoner the opportunity to

obtain early release from his sentence of confinement by denying judicially

ordered entry into the Shock program would violate the Eighth Amendment.

17

### A. Applicable Law

"The Eighth Amendment protects prisoners from cruel and unusual punishment by prison officials." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A plaintiff asserting an Eighth Amendment claim must allege both an objective and a subjective element. First, a plaintiff must show that the alleged deprivation is objectively "sufficiently serious" to constitute "cruel and unusual punishment," and second, a plaintiff must show that the charged official acted with a "sufficiently culpable state of mind." *Francis*, 942 F.3d at 150; *see also Hurd v. Fredenburgh*, 984 F.3d 1075, 1084 (2d Cir.), *cert. denied*, 142 S. Ct. 109 (2021).

To meet the objective element, a plaintiff must plead "a harm of a magnitude that violates a person's eighth amendment rights." *Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993) (internal quotation marks omitted). To meet the subjective element, a plaintiff must show that the prison officials had "a state of mind that is the equivalent of criminal recklessness," *Francis*, 942 F.3d at 150 (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)), or that the prison officials acted with deliberate indifference, *see, e.g., Hurd*, 984 F.3d at 1084-85 (finding that prison officials can be

"deliberately indifferent to their own clerical errors on the basis of their refusals to investigate well-founded complaints regarding these errors" (quoting *Francis*, 942 F.3d at 151)); *Haygood v. Younger*, 769 F.2d 1350, 1355 (9th Cir. 1985) (en banc), *cert. denied sub nom. Cranke v. Haygood*, 478 U.S. 1020 (1986) (determining that "deliberate indifference" rather than "actual intent" is the correct standard for assessing Eighth Amendment liability where a prison official's miscalculation of an inmate's release date resulted in five years of additional incarceration and holding that the inmate alleged an Eighth Amendment violation); *Sample v. Diecks*, 885 F.2d 1099, 1110-12 (3d Cir. 1989) (holding that a prison official violated an inmate's Eighth Amendment rights where the official exhibited deliberate indifference by wrongly determining that the inmate still had time to serve and caused the inmate's detention to be prolonged by nine months).

## B.   *Application*

We need not address the first prong of the qualified immunity analysis, for even assuming Matzell plausibly alleged a violation of his Eighth Amendment right, our decision in *Hurd* compels the conclusion that the law was not clearly established at the time Defendants denied Matzell an opportunity to obtain early release through participation in Shock.

19

In *Hurd v. Fredenburgh*, an inmate alleged deprivation of his Eighth

Amendment right because a DOCCS coordinator miscalculated his sentence

causing him to be imprisoned for 11 months and 11 days beyond his statutorily

mandated release date. 984 F.3d at 1082. We observed that Hurd adequately

alleged a harm under the Eighth Amendment, noting that "unauthorized

detention of just one day past an inmate's mandatory release date qualifies as a

harm of constitutional magnitude under the first prong of the Eighth

Amendment analysis." *Id.* at 1085. *But see Calhoun*, 999 F.2d at 654 (holding that

a "five-day extension of [an incarcerated person's] release date did not inflict 'a

harm of magnitude' that violates a person's eighth amendment rights"). We

further concluded, however, that the DOCCS coordinator was entitled to

qualified immunity because "it was not clearly established that prolonged

detention past one's mandatory conditional release date constitutes a harm of

constitutional magnitude under the Eighth Amendment." *Hurd*, 984 F.3d at 1087.

*Hurd*, which involved conduct that took place in 2016 and 2017, *see*

*id.* at 1075, 1082, was decided on January 20, 2021. Accordingly, at the time of the

conduct in this case, that is 2017 and 2018, there was no precedent establishing

that Defendants' conduct violated the Eighth Amendment. Hence, we conclude

20

that when Defendants denied Matzell's judicially ordered entry into Shock, it was not clearly established that denying an inmate such an opportunity for early conditional release would violate the Eighth Amendment. Thus, we reverse the district court's denial of Defendants' motion for judgment on the pleadings as to the Eighth Amendment claim.

## III.   *The Fourteenth Amendment Claim*

We conclude that Matzell has plausibly alleged that Defendants violated a clearly established Fourteenth Amendment right.

### A.   *Applicable Law*

The Fourteenth Amendment Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In addition to "guarantee[ing] . . . fair process," *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997), the Fourteenth Amendment "cover[s] a substantive sphere . . . 'barring certain government actions regardless of the fairness of the procedures used to implement them,'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

"Substantive due process rights safeguard persons against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Southerland v. City of New York*, 680 F.3d 127, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). This Court has held that "[s]ubstantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999). To succeed on a substantive due process claim a plaintiff must (1) "identify the constitutional right at stake" and (2) "demonstrate that the state action was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Hurd*, 984 F.3d at 1087.

To satisfy the second prong, "[t]he interference with the plaintiff's protected right must be so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Southerland*, 680 F.3d at 152 (internal quotation marks and citation omitted). Negligently inflicted harm will not constitute a constitutional violation, but "conduct intended to injure in some way unjustifiable by any government interest" can satisfy the shock-the-conscience

standard, *Lewis*, 523 U.S. at 849, as can, in some circumstances, conduct that

"resulted from deliberate indifference," *Rosales-Mireles v. United States*, 138 S. Ct.

1897, 1906 (2018).  The Supreme Court has explained that "[d]eliberate

indifference that shocks in one environment may not be so patently egregious in

another." *Lewis*, 523 U.S. at 849.  The deliberate indifference standard may not be

applicable in the context of a high-speed chase or a police riot in which an officer

must make a snap decision, but it may be appropriately applied in the context of

a custodial prison situation in which prison officials can actually deliberate.  *See*

*id.* at 851; *see also Rivera v. Rhode Island*, 402 F.3d 27, 36 (1st Cir. 2005) ("In

situations where actors have an opportunity to reflect and make reasoned and

rational decisions, deliberately indifferent behavior may suffice to shock the

conscience." (internal quotation marks omitted)).

> **B.    *Application***

We consider both prongs of the qualified immunity analysis:  first,

whether Matzell plausibly alleged a violation of his Fourteenth Amendment

substantive due process right, and second, if so, whether that right was clearly established.[7]

### 1. Substantive Due Process Right

The first step in the substantive due process analysis is to determine the constitutional right that is implicated. *See Hurd*, 984 F.3d at 1087. "The general liberty interest in freedom from detention is perhaps the most fundamental interest that the Due Process Clause protects." *Francis*, 942 F.3d at 141. This liberty interest is implicated "not only . . . when a court initially sentences [someone], but also when prison officials interpret and implement the sentence that the trial court has imposed." *Id.* at 142. In *Francis*, this Court found that "[r]egardless of whether [DOCCS's] course of conduct was legally justified (or perhaps even legally required), their decision to implement [an inmate's] sentence in a manner that diverged from the sentence pronounced by the sentencing court implicated a liberty interest of the highest order." *Id.*

---

[7]    Before the district court, Defendants argued that no clearly established law gave them notice that their actions violated constitutional law but did not argue that they did not violate Matzell's constitutional rights. Plaintiff contends that the argument is waived as it was not raised below. We have the discretion to reach an issue not raised below, and we exercise that discretion now. *See Burns v. Martuscello*, 890 F.3d 77, 94 n.4 (2d Cir. 2018).

24

Matzell has alleged that he was sentenced to enrollment in Shock, and that Defendants illegally denied his enrollment despite the provisions of New York statutory law that explicitly deprived them of their authority to deny admission to one sentenced to Shock in these circumstances. Defendants' decision to disqualify Matzell from enrolling in Shock diverged from the sentencing court's order and implicated his liberty interest in having his sentence implemented in a manner consistent with law and the sentencing court's order. *See id.* Therefore, Matzell has plausibly alleged the violation of a due process right.

The second step in the analysis is to determine whether Defendants' conduct shocks the conscience. *See Hurd*, 984 F.3d at 1087. As alleged in the complaint, Defendants repeatedly refused to enroll Matzell in Shock even though the amendment of N.Y. Penal Law § 60.04 gave sentencing courts the authority to sentence defendants to Shock and limited DOCCS's screening authority to instances when it determines that an individual has a medical or mental condition that will hinder the completion of the program. None of the Defendants articulated medical or mental health reasons for excluding Matzell, and thus they exceeded and abused their governmental authority by ignoring the

Court's sentencing order and the DLRA's plain statutory language. *See Natale*, 170 F.3d at 263. Even though the law was clear and Matzell's counsel sent multiple letters alerting DOCCS to the statute that mandated his admission to the program, Defendants refused to enroll Matzell in Shock. As a result, Matzell was deprived of the opportunity to secure his release 506 days earlier than his actual releasee. His four-year custodial sentence was increased by almost a third. Hence, Matzell plausibly alleged that Defendants' actions rose to the level of deliberate indifference in violation of his substantive due process rights. *See Hurd*, 984 F.3d at 1088; *see also Rosales-Mireles*, 138 S. Ct. at 1906.

Furthermore, as determined in three state court proceedings, Defendants' justification that they interpreted N.Y. Penal Law § 60.04(7)(a) as giving them authority to exclude those judicially ordered to be enrolled in Shock based on DOCCS's administrative criteria was objectively unreasonable in light of the DLRA's purpose and the plain statutory language of N.Y. Penal Law § 60.04(7)(a) and N.Y. Correction Law § 867. Given the liberty interest at stake and the clarity of the statutory law, we hold that Matzell plausibly alleged that Defendants' actions were egregious, shocking to the conscience, and

26

unreasonable and, thus, we conclude that Matzell plausibly alleged that

Defendants violated his Fourteenth Amendment substantive due process rights.

### 2. *Clearly Established Law*

We next consider whether Matzell's right to have his sentence

implemented in accordance with the sentencing court's order was clearly

established at the time of Defendants' conduct. We consider both the DLRA's

plain statutory language and the precedent established by *Hill v. United States ex*

*rel. Wampler*, 298 U.S. 460 (1936), *Earley v. Murray*, 451 F.3d 71 (2d Cir. 2006), and

*Vincent v. Yelich*, 718 F.3d 157 (2d Cir. 2013).

As an initial matter, the DLRA's plain language clearly outlined

Defendants' responsibilities and limitations regarding judicially ordered Shock

enrollment. *See Matzell*, 121 N.Y.S.3d at 156; *Matzell*, 2019 WL 12498103, at *2.

N.Y. Penal Law § 60.04(7)(a) provides that the court may issue an order directing

an individual's enrollment in Shock as defined in Article 26-a of New York

Correction Law. N.Y. Correction Law § 867 sets out the procedure for selecting

participants in Shock and distinguishes between incarcerated individuals who

apply for enrollment and incarcerated individuals who are "judicially sentenced"

to Shock. N.Y. Correction Law § 867(2) provides that an eligible individual who

27

applies may be screened for approval or disapproval. N.Y. Correct. Law § 867(2) (McKinney 2022). N.Y. Correction Law § 867(2-a), however, explains that N.Y. Correction Law § 867(2) "shall apply to a judicially sentenced shock incarceration incarcerated individual *only* to the extent that the screening committee may determine whether the incarcerated individual has a medical or mental condition that will render the incarcerated individual unable to successfully complete the shock incarceration program." *Id.* § 867(2-a) (McKinney 2022) (emphasis added). And even when it lawfully screens an individual out of admission to Shock due to a medical or mental condition, DOCCS must propose an alternative program with the same early-release benefit. N.Y. Penal Law § 60.04(7)(b) (McKinney 2022). The words of the statute clearly provide that individuals judicially ordered to Shock may only be excluded from enrollment upon a finding that they have medical or mental conditions that would inhibit them from completing the program. No such finding was made here.

Furthermore, while N.Y. Correction Law § 867(5) provides that participation in Shock is a "privilege" and that nothing in the article confers a right to participate, N.Y. Correction Law § 867(2-a) clarifies that "[n]otwithstanding [N.Y. Correction Law § 867(5)], an incarcerated individual

28

sentenced to shock incarceration *shall* promptly commence participation in the program *when* such incarcerated individual is an eligible incarcerated individual." N.Y. Correct. Law §§ 867(2-a), (5) (McKinney 2022) (emphasis added). This clarification makes clear that judicially ordered enrollment in Shock is not subject to DOCCS's administrative discretion.

Moreover, Second Circuit precedent clearly established that DOCCS's alteration of the court's sentence was unconstitutional. In *Earley*, this Court relied on *Wampler* to hold that any alteration to a sentence imposed by a judge, unless made by a judge in a subsequent proceeding, is invalid. 451 F.3d 75-76; *id.* at 76 n.1 (2d Cir. 2006) ("Although *Wampler* does not identify the source of the rule that it announces, we believe that it is based in the due process guarantees of the United States Constitution."). In *Wampler*, the Supreme Court had struck down a condition imposed on a defendant's sentence (that he would only be released upon the payment of a fine) because it was not in the judge's order and had been added by the clerk of the court. 298 U.S. at 465. In *Earley*, DOCCS added a five-year term of supervised release to a defendant's sentence pursuant to a New York law that mandated a term of supervised release. 451 F.3d at 75-76. Based on *Wampler*, this Court held that the action violated clearly

established federal law even though the change was made pursuant to state law, because "any addition to [a] sentence not imposed by the judge was unlawful." *Id.* at 75; *see also id.* at 76 ("The state court's determination that the addition to Earley's sentence by DOCS was permissible is therefore contrary to clearly established federal law as determined by the United States Supreme Court."). What is more, *Vincent* further confirmed that our decision in *Earley* clearly established that "[DOCCS] has no . . . power to alter a sentence." 718 F.3d at 169 (quoting *Earley*, 451 F.3d at 76).[8]

Based on this precedent, it was clearly established at the time of Defendants' conduct that they did not have the power to alter Matzell's sentence. Yet that is what they did by denying Matzell the opportunity to obtain early conditional release in direct contradiction to the sentencing judge's order to enroll Matzell in Shock. Even though *Wampler*, *Earley*, and *Vincent* did not specifically involve excluding an incarcerated individual from Shock, Supreme Court case law does not "require a case directly on point," *al-Kidd*, 563 U.S. at 741, and the Court has explained that "a general constitutional rule already identified

---

[8]     *Vincent* also involved state prison officials imposing conditions of supervision on former prisoners despite the absence of the conditions from the sentencing court's order. 718 F.3d at 161-62.

30

in the decisional law may apply with obvious clarity to the specific conduct in question," even if the specific conduct has not already been held unlawful. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Furthermore, the existing cases "defined the contours of the right with reasonable specificity" by showing that a sentence must be implemented consistent with a sentencing court's orders even when the change to the order is made pursuant to state law. *Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000) (quoting *Russell v. Coughlin*, 910 F.2d 75, 78 (2d Cir. 1990)).

Defendants argue that neither *Wampler* nor *Earley* "clearly established a general principle that all administrative deviations from an intended sentence violate due process." Appellants' Br. at 34. To support this argument, Defendants rely on this Court's holdings in *Francis* and *Sudler v. City of New York*, 689 F.3d 159 (2d Cir. 2012). These cases, however, do not change our analysis in this case. In *Francis*, an inmate sued DOCCS officials for violating his Eighth Amendment and Fourteenth Amendment procedural due process rights when, faced with a federal sentence imposed after a state sentence, the officials failed to implement a term of the state sentence that the inmate's state sentence run concurrently with his federal sentence. 942 F.3d at 131. Under New York law, state courts lacked the authority to direct that an inmate's state sentence run

concurrently with a federal sentence unless the federal sentence had already been imposed. *See id.* Relying on their understanding of the statute in the face of this conflict, the officials did not implement the command of the state sentence to run the sentences concurrently. *See id.* at 134-35, 148. Upon review of the district court's denial of the officials' motion for summary judgment, this Court held that *Wampler* and *Earley* did not clearly establish that the state officials would violate constitutional law where they failed to implement a state court directive in the face of a conflicting federal sentence. *See id.* at 147.

This Court had previously reached a similar conclusion in *Sudler*, where inmates sued state officials for allegedly violating their constitutional rights when they incorrectly calculated jail time credits due to the interaction between two concurrent sentences. 689 F.3d at 163-64. The plaintiffs in *Sudler* argued that *Wampler* and *Earley* "should apply not only with regard to a single sentence, but also in the context of a sentencing judge's pronouncement as to the relationship between the sentence he is imposing and another sentence imposed in a separate proceeding." *Id.* at 173. The Court declined to resolve the question about *Wampler* and *Earley*'s scope, but held that plaintiff's right was not clearly

established where the calculation of the credit "implicat[ed] multiple sentences." *Id.* at 176.

Our application of *Wampler* and *Earley* in *Francis* and *Sudler* does not control here because Defendants were not faced with a decision involving multiple or conflicting sentences. Rather, they failed to adhere to the sentencing court's order with respect to "a single sentence." *Id.* at 173.[9]

Nor did *Francis* and *Sudler* involve a circumstance where the defendants' conduct violated not only a term of the state sentence but also state law that clearly established the absence of DOCCS's authority to do what it did. In *Matter of Garner v. New York State Dep't of Corr. Servs.*, the New York Court of Appeals held that DOCCS exceeded its jurisdiction by administratively adding a mandatory period of post-release supervision to a petitioner's sentence when post-release supervision was not ordered by the sentencing judge. 889 N.E.2d

---

[9]    Additionally, in *Hurd*, we concluded that it was not clearly established that the inmate's liberty interest in his mandatory conditional release date was protected by the Fourteenth Amendment. 984 F.3d at 1089. Defendants rely on *Hurd* to argue that Matzell's Fourteenth Amendment right was not clearly established. *Hurd*, however, did not involve the right established by *Wampler* and *Earley*. In *Hurd*, the defendants did not comply with a statutory mandate, as opposed to a court-ordered mandate, to grant jail-time and good-time credits. *Id.* at 1082. Here, Defendants altered Matzell's sentence by denying him the opportunity for conditional release in contravention of the sentencing court's explicit order to enroll Matzell in Shock.

33

467, 470 (N.Y. 2008) ("[I]n recognition of DOCS's limited authority in the sentencing arena, we have previously held that 'prison officials are conclusively bound by the contents of commitment papers accompanying a prisoner' and therefore DOCS must generally 'comply with the plain terms of the last commitment order received.'" (quoting *Matter of Murray v. Goord*, 801 N.E.2d 385, 387-88 (N.Y. 2003))).  In *Matter of Prendergast v. State of N.Y. Dep't of Corrs.*, the Third Department also held that a defendant's sentence can only be altered by a judge in a subsequent proceeding.  856 N.Y.S.2d 725, 726 (3d Dep't 2008).  These decisions clearly established that DOCCS could not disregard the sentencing judge's order in such a manner as to effectively extend Matzell's sentence by 506 days.

Matzell has plausibly alleged that his substantive due process right to have his sentence implemented consistent with the sentencing court's order was clearly established and that this right was violated when Defendants essentially extended his sentencing by refusing to enroll him in Shock when he was eligible.  Thus, we affirm the district court's denial of Defendants' motion for judgment on the pleadings as to the Fourteenth Amendment claim.

34

## *CONCLUSION*

For the reasons stated above, we AFFIRM the district court's denial of Defendants' motion for judgment on the pleadings as to the Fourteenth Amendment claim, we REVERSE the district court's denial of Defendants' motion for judgment on the pleadings as to the Eighth Amendment claim, and we REMAND for further proceedings.