*Kotler v. Torres*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of March, two thousand twenty-six.

Present:
> JOHN M. WALKER, JR.,
> ROBERT D. SACK,
> EUNICE C. LEE,
> *Circuit Judges.*

_____

KERRY KOTLER,

> *Plaintiff-Appellant,*

> v.                                                                                    No. 24-879-pr

PEDRO TORRES, DAISY RODRIGUEZ, JOHN DOE #1, JOHN DOE #2,

> *Defendants-Appellees,*

CINDY MORRO,

> *Defendant.*

_____

For Plaintiff-Appellant:                          DANIEL R. LAMBRIGHT
                                                  **(**Christopher T. Dunn, Molly
                                                  K. Biklen, *on the brief*), New
                                                  York Civil Liberties Union
                                                  Foundation, New York, NY.

For Defendants-Appellees:
BLAIR J. GREENWALD,
Assistant Solicitor General,
(Ester Murdukhayeva,
Deputy Solicitor General,
Barbara D. Underwood,
Solicitor General, *on the brief*), *for* Letitia James,
Attorney General for the
State of New York, New
York, NY.

Appeal from a March 5, 2024 judgment of the United States District Court for the Eastern District of New York (Donnelly, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED** in part and **VACATED** and **REMANDED** in part.

Kerry Kotler appeals from the district court's order dismissing his suit against Pedro Torres and Daisy Rodriguez (collectively, "Appellees"), parole officers of the New York State Department of Corrections and Community Supervision ("DOCCS"), alleging violations of his due process rights under the Fourteenth Amendment of the U.S. Constitution, in violation of 42 U.S.C. § 1983.[1] Specifically, Kotler claims a violation of his due process rights based on the delay in approval of his housing for release from prison and from a denial of a fair hearing at his parole revocation proceeding.

---

[1] Kotler also named as defendants two unnamed employees of DOCCS and the New York State Office of Mental Health ("the Doe defendants") and Cindy Morro, the administrative hearing officer employed by DOCCS. The district court dismissed the claims against the Doe defendants and Morro, *see* Joint App'x at 2–3, 106 n.1, and Kotler has not appealed those rulings.

In 1997, Kotler was convicted of rape in the first degree and sentenced to an indeterminate sentence of seven to twenty-one years' imprisonment, to expire in July 2018. After serving nearly sixteen years of imprisonment, he was scheduled to be released on parole on March 11, 2013. Before his conditional release to parole supervision, New York State instituted civil commitment proceedings, alleging that Kotler was a sex offender requiring civil management pursuant to Article 10 of New York Mental Hygiene Law. Kotler's release from custody was put on hold during the pendency of the Article 10 proceedings. In June 2015, the state court determined that Kotler was a sex offender requiring Strict and Intensive Supervision and Treatment ("SIST"), as defined under New York Mental Hygiene Law § 10.03(r), meaning that he suffered from a mental abnormality but did not require confinement. Though the state court ordered that Kotler "shall be released from custody," in accordance with the prescribed SIST, it conditioned Kotler's release on his compliance with, *inter alia*, housing restrictions under New York's Sexual Assault Reform Act ("SARA"), as well as the conditions of release imposed by the Board of Parole pursuant to his criminal sentence.

SARA Compliant Housing

Kotler contends that Torres, one of the parole officers responsible for approving his housing and facilitating his release from custody, was aware of SARA-compliant housing options for him as early as July 25, 2015. Moreover, between July 21, 2016, and Kotler's eventual release from custody on November 21, 2017, Kotler allegedly submitted over fifteen potential addresses to which he could be released to Torres. Kotler alleges that Torres failed to investigate these addresses as necessary to facilitate his release, thereby violating the state court's June 2015 SIST order and resulting in his release not being effectuated until November 2017. At that time, Kotler

3

was released to a SARA-compliant residence in Bellport, New York. Torres had allegedly been aware of the Bellport housing option for more than a year before Kotler was finally released because it was one of the addresses that Kotler had submitted to him.

All told, Kotler claims that he was unnecessarily held in custody for two years and four months based on Torres's failure to take appropriate steps to investigate and approve his proffered housing options.

Parole Revocation

On June 7, 2018, Kotler was charged with violating the terms of his conditional release by threatening the safety or well-being of others. He was taken into custody pursuant to a warrant based on a violation of release report issued by Torres and Rodriguez. At the subsequent preliminary revocation hearing, Torres testified that Kotler had violated a condition of his release by offering fictitious work to a young woman and attempting to lure her to an isolated location. The woman also testified that, in addition to offering her a fictious job, Kotler repeatedly contacted her and showed up at her residence after she turned down the opportunity, though she had asked him to stop contacting her.

Ultimately, the preliminary hearing officer found probable cause to believe that Kotler had violated the conditions of his parole. A final parole hearing was thereafter scheduled for late July 2018 but then canceled because Kotler's criminal sentence expired on July 11, 2018.

The Instant Case

On November 6, 2020, Kotler, proceeding *pro se*, filed this case in the Eastern District of New York, alleging two distinct violations of his due process rights. First, Kotler alleged that Torres violated the 2015 state court order by failing to approve his SARA-compliant housing

4

options or otherwise effectuate his release into the community, thereby resulting in his prolonged incarceration in violation of the Fourteenth Amendment. Second, Kotler alleged that Torres and Rodriguez denied him a full and fair hearing at his preliminary parole revocation proceeding by soliciting, giving, and/or allowing false testimony.

The district court dismissed both claims. First, as relevant on appeal, the district court dismissed Kotler's delayed release claim because: (1) Kotler failed to adequately allege Torres's personal involvement; (2) the claim was barred by *Heck v. Humphrey*, 512 U.S. 477 (1994); and (3) Torres was entitled to qualified immunity because there was no stated constitutional violation. Second, the district court liberally construed Kotler's parole revocation claim to assert various causes of action, including fabrication of evidence, a procedural due process violation, false arrest and imprisonment, and malicious prosecution, but nonetheless found that Kotler had failed to state a claim under any of those theories. The district court dismissed Kotler's claims with prejudice, except to the extent that "the 1997 conviction and the June 2018 parole warrant are overturned or otherwise invalidated." Joint App'x at 133.

On appeal, Kotler argues that the district court: (1) erred in dismissing his prolonged incarceration claim, and (2) should have granted him leave to replead his parole revocation claim to cure the infirmities identified by the district court.

We assume the parties' familiarity with the remaining underlying facts, the procedural history, and the issues on appeal.

\*　　　　　　\*　　　　　　\*

"We review *de novo* the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6)." *Quinones v. City of Binghamton*, 997 F.3d 461, 466 (2d Cir. 2021). "To survive a

5

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).

## I.   Prolonged Incarceration Claim

On appeal, Kotler argues that the district court "did not fully appreciate [his] legal claim" and therefore improperly determined that he failed to state a claim for relief. Appellant's Br. at 22. Kotler contends that the district court mistakenly assessed his purported liberty interest in his release as if it were premised on his parole officers' obligation to assist him in securing SARA-compliant housing, which is generally insufficient to invoke due process protections unless the obligation derives "directly from the Due Process Clause itself or from the laws of the states." *Klos v. Haskell*, 48 F.3d 81, 86 (2d Cir. 1995). Instead, Kotler maintains that his actual claim is that the officers' "obligation stemmed from the June 2015 court order." Appellant's Br. at 23. Accordingly, although Kotler acknowledges that "there is generally no fundamental liberty interest to be released on parole," he nonetheless argues that the state court order created such a liberty interest here by mandating his release upon the satisfaction of specific conditions. *Id.* at 21. Kotler further argues that Torres, by failing to investigate or approve compliant addresses, intentionally failed to comply with the state court order, thereby prolonging his incarceration and violating the Fourteenth Amendment. We agree that, at the pleading stage, Kotler has plausibly stated a substantive due process claim arising from the alleged noncompliance with the state court

6

order, when considered in conjunction with state law.

It is well-established that "a state may create . . . a liberty interest protected under the Fourteenth Amendment by regulations, statutes, or court orders 'mandatory in character.'" *Kulak v. City of New York*, 88 F.3d 63, 73 (2d Cir. 1996) (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990)); *see also Washington*, 494 U.S. at 221 (explaining that a state creates a protected liberty interest when it enacts regulations using "language of an unmistakably mandatory character," requiring that specified procedures "shall," "will," or "must" be followed (quoting *Hewitt v. Helms*, 459 U.S. 460, 471–72 (1983)).

The state court order here provides, in relevant part:

> ORDERED, that Respondent *shall* reside at a residence approved by the New York State Department of Corrections and Community Supervision (Parole)
> * * *
> ORDERED, that Respondent *shall* be released from custody and onto SIST as soon as proper arrangements are made, and *shall* be placed under the jurisdiction of the New York State Department of Corrections and Community Supervision (Parole) for the purposes of Strict and Intensive Supervision and Treatment pursuant to this Order.

Joint App'x at 98–99 (emphasis added).

The use of the term "shall" is significant. "As the Supreme Court has often explained, the use of the word 'shall' makes the action mandatory." *Salazar v. King*, 822 F.3d 61, 77 (2d Cir. 2016); *see also Mach Mining, LLC v. Equal Emp. Opportunity Comm'n*, 575 U.S. 480, 486 (2015) (noting that the language "shall endeavor" is "mandatory, not precatory"). Unlike the language at issue in *Kulak*, where we held that there was no mandatory order given that the state court "recommend[ed]" only that officials should use their "best efforts" to locate an alternative placement, 88 F.3d at 68–69, 73, the order here directs that Kotler must be released from custody

once specified arrangements are made. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) (noting that the word "shall" admits of no discretion).

Appellees nonetheless take a different view. Appellees contend that the state court order did not expressly direct Torres, Rodriguez, or DOCCS to take any particular action, but instead conditioned Kotler's release on his securing an approved residence and merely "direct[ed] his release . . . as soon as proper arrangements are made." Appellees' Br. at 27. Appellees argue that this language does not impose an affirmative obligation on any individual official.

Construing Kotler's *pro se* submissions liberally,[2] however, we understand him to argue that the order's mandatory language, read together with the governing statutory framework, necessarily incorporated DOCCS's state-law obligations with respect to investigating and approving housing. *See Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (noting that this Court interprets a *pro se* complaint "to raise the strongest arguments that [it] suggest[s]" (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)). We conclude that the order cannot be interpreted in isolation.

Under New York law, a level three sex offender subject to SARA cannot lawfully be released unless he has secured SARA-compliant housing. *See People ex rel. McCurdy v. Warden, Westchester Cnty. Corr. Facility*, 36 N.Y.3d 251, 262 (2020) (explaining that the statutory residency requirement is a mandatory condition of release); *People ex rel. Rivera v. Superintendent, Woodbourne Corr. Facility*, 40 N.Y.3d 307, 311 (2023) (same). At the same time, state law assigns DOCCS an affirmative role in that process: DOCCS is required to

---

[2] Kotler filed the operative complaint *pro se* in the district court, and we therefore construe that pleading liberally. He is now represented by counsel on appeal.

"investigat[e] and approv[e] the residence of level two and three sex offenders," *Gonzalez v. Annucci*, 32 N.Y.3d 461, 472 (2018) (citation modified), and its statutory obligations are satisfied only when it "actively investigates and approves residences that have been identified by inmates and . . . provides the inmates with adequate resources to allow them to propose residences for investigation and approval," *id*. at 474.

Against that backdrop, the order's mandate that Kotler "shall be released from custody . . . as soon as proper arrangements are made," Joint App'x at 98, necessarily presupposes that DOCCS will take affirmative steps to investigate and, where appropriate, approve housing proposed by Kotler. Put plainly, Kotler cannot approve housing on his own, and DOCCS cannot lawfully release him absent such approval. To read the order as imposing no obligation on DOCCS to act would render its mandatory release language moot. Moreover, Kotler has sufficiently alleged a claim given his allegation that, beginning in July 2016, he proposed more than fifteen residences to DOCCS, but Appellees failed to take meaningful steps to investigate or approve those addresses or otherwise make arrangements to effectuate his release, resulting in his prolonged incarceration.[3] These allegations suffice to state a claim that Appellees were deliberately indifferent to their obligations under the order. *See Matzell v. Annucci*, 64 F.4th 425, 436 (2d Cir. 2023) (stating that, to succeed on a substantive due process claim, a plaintiff may demonstrate a defendant's deliberate indifference to a constitutional right). Accordingly, at least at the pleading stage,

---

[3] Kotler contends that Appellees' failure to act prolonged his incarceration by approximately two and a half years, measured from the date of the July 2015 state court order. However, the proper starting date is when Kotler first proposed housing options to DOCCS, as they were not obligated to investigate and approve of any address until Kotler proposed one, which Kotler concedes did not occur until July 21, 2016. Thus, his incarceration was purportedly prolonged by no longer than approximately sixteen months, based on his release in November 2017.

Kotler has plausibly alleged that the order created a state-law liberty interest in freedom from continued incarceration absent reasonable efforts by DOCCS to effectuate the court-mandated release.

We also reject the district court's other grounds for dismissing Kotler's claim. First, because Kotler plausibly alleges that Appellees violated a court order mandating his release, his claim does not necessarily imply the invalidity of his underlying conviction or sentence, and thus *Heck v. Humphrey* does not bar his action at this stage. *See Courtney v. Butler*, 66 F.4th 1043, 1051 (7th Cir. 2023) (holding that where a release order required release "upon the approval of a viable host site as determined by IDOC," *Heck* did not bar a § 1983 claim challenging the failure to carry out that order); *McNeal v. LeBlanc*, 90 F.4th 425, 430–31 (5th Cir. 2024) ("*Heck* does not bar claims by an overdetained prisoner who does not challenge the validity of his sentence, but merely the execution of his release." (citation modified)).

Second, Appellees are not entitled to qualified immunity at the pleading stage, *see Sabir v. Williams*, 52 F.4th 51, 64 (2d Cir. 2022), as it has long been clearly established that state officials may not deliberately disregard court orders governing the conditions of confinement, *see Matzell*, 64 F.4th at 441. Finally, to the extent Kotler's complaint inadequately alleges personal involvement and seems to rely upon group pleading, those deficiencies may be curable through amendment, and thus he should be granted leave to amend, particularly given his *pro se* status at the time of filing. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("A *pro se* complaint should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (citation modified)).

## II.    Parole Revocation Claim

As relevant here, the district court dismissed Kotler's false arrest and malicious prosecution claims, finding that Kotler was collaterally estopped from pursuing them because the preliminary hearing officer found probable cause to believe that Kotler had violated the conditions of his parole, which is a complete defense to both claims.   This dismissal was with prejudice, except to the extent that Kotler could show that the June 2018 parole warrant had been overturned or otherwise invalidated.

On appeal, Kotler does not challenge the district court's dismissal of his claims, but instead argues that, as a *pro se* litigant at the time of his complaint, he should be permitted to replead them to address the identified deficiencies.   *See Chavis*, 618 F.3d at 170.   Kotler maintains that there exists a possible factual basis for his amended claim—for example, he could plead "that the other parole revocation charges against him were baseless and that his parole officer had no reasonable belief that he violated the terms of his parole."   Appellant's Br. at 31; *see also* Appellant's Reply Br. at 20–21 (arguing that Kotler could also "plead that due to parole officers Rodriguez and Torres intentionally relying on false evidence to issue his warrant, he was falsely arrested and . . . none of the charges in the warrant were supported by probable cause").   As to Appellees' collateral estoppel defense, Kotler argues that it is an insufficient basis to prevent him from repleading because that doctrine "is grounded on concepts of fairness and should not be rigidly or mechanically applied."   Appellant's Reply at 21 (quoting *LaFleur v. Whitman*, 300 F.3d 256, 271 (2d Cir. 2002)).   We disagree.

In general, "[a] *pro se* complaint is to be read liberally, and should not be dismissed without granting leave to amend at least once when a liberal reading of the complaint gives any indication

11

that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (citation modified). However, "[l]eave to amend may properly be denied if the amendment would be futile." *Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013) (citation modified). We review a district court's denial of leave to amend *de novo* when it is based on a determination that amendment would be futile. *Meyer v. Seidel*, 89 F.4th 117, 140 (2d Cir. 2023).

The district court properly dismissed Kotler's parole revocation claims with prejudice, except to the extent that he can show the parole warrant has since been invalidated. As the district court noted, a plaintiff asserting either a state-law or § 1983 malicious prosecution claim must allege, among other things, "lack of probable cause for commencing the proceeding." *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). Similarly, "[p]robable cause is a complete defense to a constitutional claim of false arrest and false imprisonment." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (citations omitted). Here, the preliminary hearing officer's finding of probable cause has preclusive effect. To the extent that Kotler claims he did not have a "full and fair opportunity to litigate the issue" of probable cause during the preliminary hearing, Appellant's Reply Br. at 21–22 (citation modified), that argument has been forfeited, since Kotler has not challenged the district court's dismissal of his procedural due process claims regarding the preliminary hearing, *see Katel Liab. Co. v. AT & T Corp.*, 607 F.3d 60, 68 (2d Cir. 2010) ("An argument raised for the first time on appeal is typically forfeited."). Therefore, the district court did not abuse its discretion in denying leave to amend.

*        *        *

We have considered Kotler's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** in part and **VACATE** and **REMAND** in part the judgment of the district court.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court